# United States Court of Appeals
## For the First Circuit

No. 07-1267

STEPHEN PINA,

Petitioner,

v.

MICHAEL MALONEY, ET AL.,

Respondents.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker,* U.S. District Judge]

Before

Boudin, Farris,** and Howard,
Circuit Judges.

Emanuel Howard for petitioner.
Annette C. Benedetto, Assistant Attorney General, Criminal
Bureau, with whom Martha Coakley, Attorney General, was on brief,
for respondents.

May 11, 2009

---

*Of the Southern District of New York, sitting by designation.

**Of the Ninth Circuit, sitting by designation.

**HOWARD**, <u>**Circuit Judge**</u>.  Stephen Pina was convicted of first-degree murder by a Massachusetts jury.  After direct and collateral review in the state courts, he filed a petition for habeas corpus review in federal district court, claiming among other allegations that his trial counsel was ineffective because he failed to call an alibi witness.  The district court denied all of the claims presented in Pina's habeas petition, concluding in particular that habeas review of the ineffective assistance claim was barred because Pina defaulted on the claim in state court pursuant to an independent and adequate state procedural rule.

We granted a certificate of appealability on the question of whether Pina's competency claim is procedurally defaulted.  Although we cannot endorse the district court's procedural default ruling, we nevertheless affirm the denial of Pina's habeas petition, as the ineffective assistance of counsel claim plainly fails on the merits.

## I.  Facts

"We take the facts as recounted by the Massachusetts Supreme Judicial Court decision affirming [Pina's] conviction, supplemented with other record facts consistent with the SJC's findings."  <u>Yeboah-Sefah</u> v. <u>Ficco</u>, 556 F.3d 53, 62 (1st Cir. 2009) (quotation omitted).

On February 26, 1993, Keith Robinson was murdered.  The murder occurred around 9 p.m. and took place in a public area in

-2-

the Mission Hill area of Boston, Massachusetts.  Robinson was shot a number of times at close range.

After an investigation, the police arrested Pina for the murder.  At his trial, the state called witnesses who:  (i) developed Pina's potential motive for the murder, which related to drug dealing; (ii) placed him at the murder scene on the day of the murder; and (iii) identified Pina as the murderer.  Among the witnesses called was police officer James O'Loughlin, who patrolled the Mission Hill area and was familiar with Pina.  O'Loughlin testified that on the day of the murder, he saw Pina in the area both before and after the murder occurred.  He also testified that two days after the murder, Pina told him that although he may have been near the murder scene on the day of the murder, he was not the shooter.  Also testifying for the state were two persons who witnessed the murder --  Tim Hall and Debra Rocher Annas.  Both identified Pina as the shooter.  The jury found Pina guilty and he was sentenced to life imprisonment.

## II.  Post-Conviction Proceedings

Following Massachusetts state procedure, see Mass. Gen. Laws ch. 278, § 33E, Pina directly appealed his conviction to the SJC.  In his appeal, represented by new counsel, Pina advanced a host of claims.  He did not, however, claim that his trial counsel provided him ineffective assistance.

After the SJC affirmed his conviction, Pina filed, pro se, a new trial motion. Later, this time with the assistance of counsel, he filed an addendum to this new trial motion. In the addendum, Pina claimed that his trial counsel provided him ineffective assistance because he failed to present an alibi defense. This defense would have relied on the testimony of Tomorrow Vailes, Pina's fianceé at the time of trial. Pina claimed that Vailes informed his counsel that she was willing to testify that Pina was with her when Robinson was killed. Although included on the trial witness list by Pina's counsel, Vailes was never called to testify.[1]

Although Pina identified Vailes as an alibi witness in the addendum to the new trial motion, he failed to attach an affidavit detailing the substance of her proposed testimony. The court relied on that omission in denying the motion. With respect to the ineffective assistance claim, the court observed that, without an affidavit, "the court cannot assess whether Vailes would have provided an alibi for [Pina] at the time of the Robinson murder." The court also denied Pina a new trial based on the other claims that he advanced in his new trial motion.

---

[1]  The portions of the state court record that have been provided to us do not contain any indication one way or the other whether the prosecutor, pursuant to Mass. R. Crim. P. 14, requested that the defendant file a pre-trial notice of alibi.

Subsequently, Pina petitioned a single gatekeeper justice of the SJC for leave to appeal the denial of his new trial motion to the full SJC.[2] In his petition, Pina again argued, inter alia, that his trial counsel was ineffective because he failed to call Vailes as an alibi witness. The gatekeeper justice denied Pina's petition, stating with respect to the ineffective assistance of counsel claim: "I base my denial specifically on . . . the waiver of the defendant's claim of ineffective assistance of counsel."

Pina then filed the instant petition for a writ of habeas corpus in federal district court, again claiming ineffective assistance based on his counsel's failure to call Vailes. He also requested an evidentiary hearing on this claim. The district court concluded that Pina had procedurally defaulted this claim, based on the fact that the single gatekeeper justice had ruled that the claim was waived. Consequently, the district court denied Pina's requests for an evidentiary hearing and habeas relief, and this appeal followed.

---

[2] In a capital case where a new trial motion is denied after the SJC has affirmed the conviction on direct appeal, "the petitioner must apply to a single 'gatekeeper' justice of the SJC for leave to appeal to that court, and 'no appeal shall lie . . . unless the appeal is allowed by a single justice . . . on the ground that it presents a new and substantial question which ought to be determined by the full court.'" Currie v. Matesanz, 281 F.3d 261, 263 (1st Cir. 2002) (citing Mass. Gen. Laws ch. 278, § 33E).

### III.  Discussion

We review the district court's denial of habeas relief de novo, <u>Yeboah-Sefah</u>, 556 F.3d at 65, and its decision to not hold an evidentiary hearing for an abuse of discretion.  <u>Teti</u> v. <u>Bender</u>, 507 F.3d 50, 60 (1st Cir. 2007).

"Habeas review in a federal court is available as to a claim adjudicated on the merits in State court proceedings, but only in instances affecting or involving clearly established federal" law.  <u>Phoenix</u> v. <u>Matesanz</u>, 189 F.3d 20, 24 (1st Cir. 1999) (quotations omitted); <u>see also</u> 28 U.S.C. § 2254(d).  It follows that where a state court has denied the claim on an independent and adequate <u>state-law</u> ground, whether procedural or substantive, federal habeas review is barred, in the absence of some exceptions not relevant here.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Cone</u> v. <u>Bell</u>, No. 07-1114, slip. op. at 15-16, 556 U.S. ___ (April 28, 2009).

### A.  Procedural Default

The gatekeeper justice determined that Pina waived the ineffective assistance of counsel claim.  The initial question posed, then, is whether the waiver ground relied on by the gatekeeper constituted a procedural default that established an adequate and independent ground for the state court decision. <u>See</u> <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 736 (1991) ("[F]ederal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on

-6-

independent and adequate state grounds.").  The focus here is on the "adequate" component, as the gatekeeper "clearly and expressly" relied on Pina's procedural default to dispose of the competency claim.  See Harris v. Reed, 489 U.S. 255, 266 (1989) (applying the rule that the state court judgment must clearly and expressly rest on the prisoner's failure to comply with the state procedural rule to be considered sufficiently independent to bar habeas review) (citing Michigan v. Long, 463 U.S. 1032, 1041 (1983)).[3]

The gatekeeper justice's summary treatment of Pina's ineffective assistance claim stated only that, "I base my denial specifically on . . . the waiver of the defendant's claim of ineffective assistance of trial counsel."  The state argues that there were two distinct procedural defaults; it contends that either one is an adequate ground to foreclose habeas review.  These alleged procedural defaults are:  (i) Pina's failure to raise the competency claim in his direct appeal to the SJC and (ii) his failure to comply with Massachusetts Rule of Criminal Procedure 30(b) when he filed his new trial motion.[4]

---

[3]  In addition to the waiver ruling, the single justice noted with respect to the merits that trial counsel's decision not to call the alibi witness was a tactical one.

[4]  Specifically, the state argues that Pina failed to comply with Mass. R. Crim. P. 30(b) by not attaching to his new trial motion an affidavit detailing Vailes's proposed testimony.
  Rule 30 encompasses all motions for post conviction relief, including motions for a new trial.  Subsection (c)(3) of Rule 30 provides:

An objective assessment of the record suggests that is it is likely that the gatekeeper justice considered Pina's competency claim to be waived because he failed to raise it on direct appeal. The state had argued waiver to the gatekeeper on that sole ground -- Pina's failure to file an ineffective assistance claim on direct appeal. The state never argued to the single justice that Pina had waived his claim because he failed to attach an affidavit to his new trial motion. In context, the gatekeeper justice's waiver determination is better viewed as referring to Pina's failure to raise his competency claim on direct appeal.[5]

To be considered an "adequate" ground to bar habeas review, the state procedural rule that is the basis for a

---

> Affidavits.  Moving parties shall file and serve and parties opposing a motion may file and serve affidavits where appropriate in support of their respective positions.  The judge may rule on the issue or issues presented by such motion on the basis of facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits.

Mass. R. Crim. P. 30(c)(3).

[5]  Additionally, in the federal district court, the state represented that the gatekeeper's "waiver" ruling was based on Pina's failure to pursue his competency claim on direct appeal.  In its response to Pina's request that the district court hold an evidentiary hearing on his ineffective assistance claim, the state claimed that any evidentiary hearing would be futile because of Pina's procedural default in state court.  In identifying the relevant procedural default, the state wrote:  "[T]he Single Justice . . . denied the gatekeeper petition on the ground *inter alia* that the claim of ineffective assistance of trial counsel was deemed 'waived' by the motion judge since it was <u>not presented on direct appeal</u> and in the absence of any showing of ineffective assistance of appellate counsel."  (emphasis added).

procedural default ruling must be regularly and consistently enforced by the state courts. Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002); see also Smith v. Texas, 550 U.S. 297, 313 (2007) (using terms "regularly applied and well-established").

We are not persuaded that the procedural rule apparently relied on by the gatekeeper justice has been regularly and consistently applied by the Massachusetts courts. Even in cases where an ineffective assistance claim may feasibly be raised on direct appeal, such as cases in which the claim does not require additional factual development, the SJC has declined to adopt an iron-clad rule of waiver. Commonwealth v. Zinser, 847 N.E.2d 1095, 1097 n.2 (Mass. 2006) ("We do not decide whether a defendant waives even a claim of ineffective assistance resolvable on the trial record alone by failing to raise it on direct appeal."). And the SJC has stated on numerous occasions its preference that a defendant assert a competency claim in a motion for a new trial rather than on direct appeal. See, e.g., id. at 1096 n.1; Commonwealth v. Peloquin, 770 N.E.2d 440, 446 n.5 (Mass. 2002); see also Commonwealth v. McCormick, 717 N.E.2d 1029, 1031 (Mass. App. Ct. 1999) ("Both the Supreme Judicial Court and this court have long and consistently observed that claims of ineffective assistance of counsel, at least in the first instance, should be advanced in the context of a motion for a new trial.") (citations omitted); cf. English v. Cody, 146 F.3d 1257 (10th Cir. 1998).

Accordingly, we are not prepared to conclude that Pina procedurally defaulted his ineffective assistance of counsel claim. We do not foreclose, however, the possibility based on further insight into Massachusetts law that there are circumstances under which such claims may be viewed as procedurally defaulted when not raised on direct appeal.

## B. **Merits**

Having decided the precise issue on which we allowed the certificate of appealability, we could at this point remand this case to the district court to permit it to analyze the merits of Pina's competency claim. See, e.g., Leyva v. Williams, 504 F.3d 357 (3d Cir. 2007); Moormann v. Schriro, 426 F.3d 1044 (9th Cir. 2005); St. Pierre v. Cowan, 217 F.3d 939 (7th Cir. 2000). Doing so, however, would be a pointless exercise, given the record in this case.

"[W]e may affirm the district court's denial of habeas relief on any ground made manifest by the record." Pike v. Guarino, 492 F.3d 61, 71 (1st Cir. 2007) (citations omitted). The record includes not only the facts necessary to decide this case, but also Pina's habeas petition in which he argues the merits of his ineffective assistance claim. There is nothing to be gained through further development of the record or the arguments.

Although in some instances a claim that counsel was incompetent cannot be decided without evidence of counsel's own

-10-

thinking, often the reasonableness of counsel's challenged actions is apparent from the face of the record, and many such claims are resolved on this basis. Nor in this court has petitioner argued that the district court needed to have an evidentiary hearing, a choice that is often up to the district judge although constrained in some instances by statutory restrictions. See 28 U.S.C. § 2254 (e) (2); Williams v. Taylor, 529 U.S. 420, 437 (2000).[6]

As we do not believe that the question whether there was ineffective assistance in this case is a close one that would benefit from layered judicial scrutiny, we will examine the merits of Pina's competency claim. See Judd v. Haley, 250 F.3d 1308, 1318-19 (11th Cir. 2001). Although the gatekeeper did comment briefly on the merits, for the sake of economy we will by-pass the threshold question of whether there has been a state court merits adjudication. In the absence of a state merits determination, the more deferential habeas review under the Antiterrorism and Effective Death Penalty Act is inapplicable and our review is de novo. Horton v. Allen, 370 F.3d 75, 80 (1st Cir. 2004) (citing Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001)).

---

[6] Pina speculates that his counsel failed to call Vailes because he had "completely forgotten about [her]." But Pina's addendum to his new trial motion in state court effectively conceded that his counsel -- who had in fact listed Vailes as a potential witness and cannot conceivably have "forgotten" about her -- had made a considered judgment not to call her.

-11-

To establish ineffective assistance of counsel, the defendant must satisfy both a performance prong and a prejudice prong. Strickland v. Washington, 466 U.S. 668, 687 (1984); Malone v. Clarke, 536 F.3d 54, 63-64 (1st Cir. 2008). Specifically, the defendant must prove both (1) that counsel's performance fell below an objective standard of reasonableness (viz., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"); and (2) that counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 687-88.

In considering counsel's performance, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)); Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (describing our review of counsel's performance as "highly deferential").

Pina claims his counsel was deficient because he failed to call Vailes as an alibi witness during his trial. During the collateral state court proceedings, Vailes provided an affidavit detailing the substance of her proposed testimony. In the affidavit, she stated that Pina arrived at her apartment the day before the murder. She also stated that when she left for school

on the morning of the day of the murder, Pina was in bed, and that when she returned to her apartment, he was still in bed and appeared never to have left. Vailes further stated that Pina was with her continuously at her apartment in Dorchester, Massachusetts from 1:30 p.m. on the day of the murder until the afternoon of the next day. The murder occurred in the Mission Hill area of Boston, Massachusetts during that window of time -- specifically, around 9:00 p.m on February 26. Pina's counsel met with Vailes before trial and was aware both of her willingness to testify and what her testimony would have entailed. Although he placed Vailes on the witness list, Pina's counsel chose to not call her.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. Because Pina concedes that his counsel was aware of both Vailes and the substance of her proposed testimony, he faces a high hurdle in challenging his counsel's performance.

Given the case put on by the state, Pina's counsel provided effective assistance in choosing to forgo an alibi defense and instead to focus the defense on the issue of identification. In its opening statement, the state told the jury that it would put on a witness -- Officer O'Loughlin -- who would testify that on the day of the murder he saw Pina in the Mission Hill area both before and after the murder occurred and that Pina admitted to being in

the area on that day. The state also told the jury that two witnesses, Hall and Annas, would testify that they had witnessed the murder and that Pina was the shooter.

As represented, the state called these witnesses. O'Loughlin testified that he observed Pina near the murder scene mere hours before the murder and that, immediately after the shooting, he witnessed an individual matching Pina's description fleeing the murder scene. He also testified that two days after the murder, Pina voluntarily visited him at the police station to discuss the investigation. Although Pina initially denied being in the Mission Hill area on the day of the shooting, when O'Loughlin told Pina that he had seen him there Pina replied, "Maybe I was there, but I didn't shoot anybody."

Although the two eyewitnesses called by the state testified generally as the state had claimed they would, their accounts of the murder were slightly varied. In particular, although Hall testified that he had been standing within hand-shake distance of the victim when he was murdered, the other eyewitness, Annas, testified that she saw only one person near the victim -- Pina. Additionally, Hall testified that Pina wore a red jacket whereas Annas testified that Pina wore black or dark clothing.

Under these circumstances, counsel's decision to pursue a defense of misidentification, rather than an alibi defense, can only be viewed as a reasonable, tactical decision. An alibi

defense came with inherent risks. Given that Pina was never scheduled to testify (nor has he alleged at any point that he was prepared to), the success or failure of the defense would have hinged almost solely on the testimony of a plainly interested witness -- Vailes, who was Pina's fianceé at the time of trial. See Davis v. Alaska, 415 U.S. 308, 316 (1974) ("The partiality of a witness is subject to exploration at trial, and is always relevant when discrediting the witness and affecting the weight of his testimony."). As Vailes's testimony would have contradicted both Officer O'Loughlin's testimony and Pina's own effective admission that he was in the Mission Hill area on the day of the shooting, it was certainly reasonable for trial counsel not to call Vailes for fear she would not be believed. See Horton, 370 F.3d at 86-87 (concluding that counsel's decision not to call potential alibi witnesses was "legitimate trial strategy" because the "proposed testimony would have conflicted with [the defendant's] own version of events").

A defense focused solely on the potential misidentification of Pina as the murderer, on the other hand, was consistent with Pina's presence at the scene on the day of the shooting and avoided potentially damaging contradictions. It also carried an added advantage: it focused the jury's attention on weaknesses in the eyewitness testimony. Both of the state's eyewitnesses viewed the murder from close range yet they gave

slightly varied descriptions of the shooter and arguably conflicting accounts of the murder itself. Pina's counsel emphasized this during his closing argument. See Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993) (concluding that where the government's case was "relatively weak . . . [r]easonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's witnesses").

In any event, even if reasonable minds could disagree about what defense strategy would have been best in this case -- one premised on misidentification, alibi, or some combination thereof -- "the proper standard for [measuring] attorney performance is that of reasonably effective assistance," as guided by "prevailing professional norms" and consideration of "all the circumstances" relevant to counsel's performance. Strickland, 466 U.S. at 688. As the Supreme Court has observed, "[t]here are countless ways to provide effective assistance in any given case." Id. at 689. All things considered, Pina's counsel provided reasonably effective assistance here.

The denial of Pina's habeas petition is **affirmed**.