# United States Court of Appeals
## For the First Circuit

No. 09-1011

SCOTT FORSYTH,

Petitioner, Appellant,

v.

LUIS SPENCER,
SUPERINTENDENT AT MCI NORFOLK,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Boudin, Stahl and Lipez,
Circuit Judges.

Victoria L. Nadel for appellant.
Jessica V. Barnett, Assistant Attorney General, Criminal
Bureau, Appeals Division, with whom Martha Coakley, Attorney
General, was on brief for appellee.

February 16, 2010

**BOUDIN**, <u>Circuit Judge</u>.  Scott Forsyth, appealing after a denial of his petition for habeas corpus, is serving eight to ten years in state prison for assault and battery with a dangerous weapon, malicious destruction of property, and attempted arson. His conviction stemmed from an incident at his mother's home in the pre-dawn hours of September 10, 2000.  During an argument, Forsyth took a nearby can of gasoline and chased his mother into the kitchen with it; spilled gasoline all over the kitchen floor and splashed it onto her head and shoulders; and threatened to set fire to his mother, himself, and the house.

When Forsyth's mother attempted a 911 call, Forsyth pulled the phone from the wall, but police responded to the interrupted call.  Forsyth was thereafter charged in the Massachusetts Superior Court with assault with intent to murder and the three lesser offenses listed above.  Just prior to proceedings on December 19, 2000, an unrecorded lobby conference with the presiding judge occurred to discuss a possible guilty plea and sentence.  What was said in the conference is evidenced by later affidavits submitted by the three individuals who attended it (in addition to the judge): the prosecutor, Forsyth's plea counsel, and a probation officer.

From these affidavits and the later proceedings, it is clear the parties at the conference could not agree upon a recommended sentence; but they agreed that Forsyth would aim to

-2-

plead guilty to the three less serious charges in exchange for the Commonwealth's dismissal of the assault with intent to murder charge; and they discussed obtaining for his sentencing a mental health evaluation based on Forsyth's history of mental illness, including bipolar disorder. None of the three affiants claims that a specific sentence recommendation was promised by the prosecutor, but recollections differ on what if anything was said as to possible numbers.

In her affidavit, Forsyth's plea counsel said that her "memory [was] that the Commonwealth was willing to request a three to five year term if the defendant was in agreement"; that absent such an agreement the prosecutor did not commit to any recommendation; but that plea counsel thought the Commonwealth would still recommend and the judge would accept a term in that range. The prosecutor and probation officer had no memory that a three to five year term was mentioned, and the probation officer remembered only that the prosecutor had said in the conference that she "was going to recommend a lengthy period of incarceration."[1]

---

[1]The prosecutor said the following:

Although I have no specific memory of ever mentioning three to five years as a possible sentence, during preliminary negotiations I may have offered to try to get a three to five year sentence on an agreed plea. I never secured this recommendation by my office because the defendant made clear that he would not join in a sentencing recommendation.

After the lobby conference, Forsyth's plea counsel conferred with Forsyth. Forsyth averred (in a 2003 affidavit) that his plea counsel told him that "the lawyer for the government said she would ask for three to five years of incarceration in the House of Correction," but his plea counsel's affidavit states that she "never told Mr. Forsyth that the Commonwealth would recommend at most three to five years." Instead, her affidavit says, she told him only that a "three to five year term had been discussed, [but] the Commonwealth had not guaranteed what its recommendation was going to be."

Forsyth then pled guilty to the three lesser charges already listed and the Commonwealth dismissed the assault with intent to murder charge. The court made the usual inquiries to assure that the plea was being entered voluntarily and with a basis in fact. The court also invited the prosecutor to list the maximum penalties for each of the charges to which Forsyth was pleading guilty and confirmed that Forsyth understood that the court could impose the maximum sentence for each charge and do so consecutively. Both in a signed, written waiver of rights and in court, Forsyth confirmed that no promises had been made to induce his plea.

After a psychiatric evaluation, a sentencing hearing was held on June 4, 2001. The Commonwealth recommended that Forsyth be sentenced to eight to ten years in prison for assault and battery

with a dangerous weapon. The court accepted the Commonwealth's recommendation, taking note of the seriousness of Forsyth's prior criminal history, which included a previous attempt on his mother's life in which he had stabbed her with a screwdriver. Forsyth reacted angrily to the sentence but, at the time, did not assert that he had been promised or assured of either a different recommendation by the prosecutor or a different sentence.

In July 2001, Forsyth filed motions to revise and revoke his sentence. That fall, he filed pro se a motion to withdraw his plea, asserting in an affidavit that he "had a deal and copped out to house time split with probation." Thereafter, in 2003, Forsyth (now aided by successor counsel) claimed in a new motion to withdraw the plea that his plea counsel either "misunderstood the Commonwealth's proposed recommendation or . . . misinformed Mr. Forsyth of what that recommendation would be," and that Forsyth "acted in reliance upon [his] attorney's representation of the government's position." It was at this point that Forsyth filed the 2003 affidavit earlier quoted.[2]

In response, the Commonwealth submitted the affidavits (discussed above) of the prosecutor, Forsyth's plea counsel, and

---

[2]Forsyth's new counsel had no personal knowledge of what happened incident to the guilty plea but she stated, in an accompanying affidavit of her own, that Forsyth's plea counsel had told her that in the December 19 lobby conference "the Commonwealth recommended a three to five year term and that the Court appeared amenable to a House of Correction term followed by probation."

the probation officer regarding the December 19 lobby conference and Forsyth's conversation with plea counsel prior to entering his guilty plea. The trial judge denied the motions to revise the sentence and to withdraw the guilty plea and denied a request for an evidentiary hearing, saying that Forsyth's affidavit was "self-serving," that he (the judge) "credit[ed] the affidavits" of the prosecutor and Forsyth's plea counsel, and that the Commonwealth had in fact told Forsyth's counsel that it intended to recommend "a lengthy sentence." The Massachusetts Appeals Court affirmed, Commonwealth v. Forsyth, 868 N.E.2d 953, 2007 WL 1775200 (Mass. App. Ct. 2007), and further review was denied, Commonwealth v. Forsyth, 873 N.E.2d 247 (Mass. 2007).

Forsyth then filed a federal habeas corpus petition, arguing that his plea was based upon inaccurate and incomplete information and therefore involuntary and that he had received ineffective assistance of counsel. A flawed plea may sometimes comprise a due process violation, Boykin v. Alabama, 395 U.S. 238, 243 & n.5 (1969); inadequate counseling can also undermine due process and Sixth Amendment rights where counsel's efforts do not meet minimum standards and where the outcome was thereby affected. Strickland v. Washington, 466 U.S. 668, 684-85, 687-96 (1984).

Adopting a magistrate judge's report and recommendation, the district court dismissed the petition. Granted a certificate of appealability, Forsyth has now renewed his constitutional claims

in this court: mainly he contends that his plea counsel misled him into thinking that the prosecutor had promised to recommend a three to five year prison sentence or at least predicted ineptly that the Commonwealth would make such a recommendation.

Our review of the district court's decision is de novo. Pina v. Maloney, 565 F.3d 48, 52 (1st Cir. 2009). The governing federal habeas statute provides that a state decision may be overturned--so far as it resolves factual issues--only if it is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3] 28 U.S.C. § 2254(d)(2) (2006). As for federal legal issues decided by the state court, they may be set aside only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." Id. § 2254(d)(1).

The state courts credited the affidavit of Forsyth's plea counsel; the key pertinent content amounted to this: that plea counsel had told Forsyth that the prosecutor had not promised a

---

[3]The petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Rashad v. Walsh, 300 F.3d 27, 34 (1st Cir. 2002). A different provision of the statute requires clear and convincing evidence from the petitioner in order to defeat a state court factual finding, 28 U.S.C. § 2254(e)(1), but we need not consider whether this standard applies because we find that Forsyth cannot prevail even under the arguably less deferential section 2254(d)(2) standard. Wood v. Allen, No. 08-9156, 2010 WL 173369, at *6 & n.2 (U.S. Jan. 20, 2010); see John v. Russo, 561 F.3d 88, 92 (1st Cir. 2009); Teti v. Bender, 507 F.3d 50, 56-60 (1st Cir. 2007), cert. denied, 128 S. Ct. 1719 (2008).

specific recommendation and that plea counsel had never told him that the recommended sentence would not exceed three to five years. There is ample independent support in the record for plea counsel's sworn statements and, while no single element is conclusive, the collective evidence is powerfully supportive:

> •the prosecutor swore that no such recommendation or commitment had been made to plea counsel;

> •the probation officer recalled only that the prosecutor had said in the lobby conference that she was going to recommend a lengthy period of incarceration;

> •petitioner represented both in the written waiver of rights and in open court that no promises had been made to secure his guilty plea;

> •when the prosecutor at sentencing later recommended the eight to ten year term, neither plea counsel nor petitioner responded that this was contrary to a commitment; and

> •on pronouncement of the sentence, petitioner became quite angry, but did not say that he had been told of any commitment by the prosecutor to recommend a shorter sentence.

True, Forsyth later asserted that he was told that the prosecutor would recommend the three to five year sentence, but such professions are not uncommon when a tough sentence is imposed, and in this case they were belated. True, his successor defense counsel attested to a supposed admission by plea counsel (see note 2, above); but assuming plea counsel said what is recounted, it looks to be little more than a reference to a possible proposed

deal--a joint recommendation for three to five years--that was never pursued.

In all events, the state court credited plea counsel and the prosecutor and declined to credit Forsyth. Certainly Forsyth fails to establish that the state court erred in finding no promise or commitment by the prosecutor existed and in finding plea counsel did not lead Forsyth to believe the contrary, still less that the state court's decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). His due process claim thus fails insofar as it rests on the premise that plea counsel provided false information about the prosecutor's commitments or intentions.

Nor was the district court required to hold an independent evidentiary hearing to try the issues already determined by the state courts. Pina, 565 F.3d at 54; Teti, 507 F.3d at 60-63. Forsyth has offered no reason to believe that, "with the benefit of an evidentiary hearing, [he could] develop a factual record that would entitle him to habeas relief." Schriro v. Landrigan, 550 U.S. 465, 475 (2007). The district court did not abuse its discretion in declining to hold an evidentiary hearing.

Forsyth presses on appeal a separate claim that plea counsel advised Forsyth that a three to five year sentence was the maximum likely sentence that would be recommended or that the judge would impose, thereby offering advice that was incompetent and depriving Forsyth of the constitutionally required effective

-9-

assistance of counsel. The factual premise for this claim is not well developed and the claim itself may not have been preserved. But the short answer is that if plea counsel did prophesy that the term of three to five years would likely be recommended, imposed or both, it was hardly an incompetent conjecture.

A defense counsel is entitled to offer to a client pondering a plea counsel's reasonable best guess as to a likely sentence.[4] Here, the possibility of a <u>joint</u> three to five year recommendation as part of the plea package may well have been discussed between counsel; Forsyth's medical history offered some prospect that the judge might be sympathetic; his mother, the victim, opposed incarceration; and the Commonwealth's non-binding proposed sentencing guidelines were favorable to Forsyth. If counsel offered such a prediction, she was not incompetent in doing so. <u>Strickland</u>, 466 U.S. at 687-91.

Forsyth separately argues that his plea counsel should have alerted the court to the pre-plea negotiations as a mitigation factor at sentencing, but he offers no legal analysis or reason why this would have affected his sentence; indeed, the judge was already

---

[4]<u>See</u> <u>Knight</u> v. <u>United States</u>, 37 F.3d 769, 775 (1st Cir. 1994) ("[A]n inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel."); <u>United States</u> v. <u>Pallotta</u>, 433 F.2d 594, 595 (1st Cir. 1970) ("[A] mere prediction by counsel of the court's likely attitude on sentence, short of some implication of an agreement or understanding, is not ground for attacking a plea." (internal quotation marks omitted)).

-10-

aware of negotiations, having attended the lobby conference at which they occurred. Forsyth has also moved to supplement the record, but the documents to which he refers are already in the record and have been considered. We <u>affirm</u> the district court's judgment and <u>dismiss</u> the motion to supplement as moot.

<u>It is so ordered.</u>