**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 14-1298

HECTOR MONTANEZ,

Petitioner, Appellant,

v.

LISA A. MITCHELL, Superintendent, and
MARTHA COAKLEY, Attorney General,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Selya, Circuit Judge,
Souter,[*] Associate Justice,
and Lipez, Circuit Judge.

Karen Elizabeth Morth for appellant.
Thomas E. Bocian, Assistant Attorney General, with whom Martha Coakley, Attorney General of Massachusetts, was on brief, for appellees.

April 8, 2015

---

[*]     Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** Hector Montanez appeals the district court's denial of federal habeas relief from Massachusetts convictions for unarmed burglary in the nighttime and possession of "burglarious" instruments. He claims that the trial court's limitation of his cross-examination of the victim violated his Sixth Amendment right to confront witnesses, and that the prosecution's belated production of the victim's 911 call record (supplied only after the motion for a new trial) infringed his Fifth Amendment right to the disclosure of favorable evidence in the state's hands, as recognized in Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. On de novo review, we affirm.

Montanez's convictions turned on the testimony of Nick Nichols, the victim and sole eyewitness. After going to bed one night, Nichols heard a noise in his house, which led him to grab an unlicensed handgun and confront an intruder, who fled. Nichols followed and fired in the fleeing burglar's general vicinity, to no avail. He then called 911 and described the culprit's height, facial hair, and jacket. Relying on this description, the police picked up Montanez, whom Nichols identified as the intruder in a "show up" later that night, and again at trial. A jury convicted Montanez on both counts, and the Massachusetts Appeals Court affirmed the convictions as well as a post-conviction court's denial of a motion for new trial. Commonwealth v. Montanez, 958 N.E.2d 535 (Mass. 2011). After the Supreme Judicial Court denied

review, 961 N.E.2d 590 (Mass. 2012), Montanez filed this unsuccessful federal habeas petition, as to which the district court granted a certificate of appealability (COA) on the two issues just mentioned.

                                I.

The Sixth Amendment Confrontation Clause claim arises from the trial court's refusal to allow Montanez to cross-examine Nichols as to bias, which Montanez attacks as legal error, not as a product of erroneous fact-finding.  According to Montanez, Nichols would have been conscious of a risk of being charged with possessing and firing an unregistered firearm if he failed to support the police's choice to charge Montanez with the crime.  The ensuing bias is said to have induced Nichols to identify Montanez (incorrectly, according to Montanez) as the burglar.

Because the Massachusetts Appeals Court considered this claim and rejected it, see Montanez, 958 N.E.2d at 535 n.3 (observing that the jury heard evidence on Nichols's alleged bias and defense counsel argued it to the jury), the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) bars habeas relief for legal error unless the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  In the absence of a flat-out mistake (a "contrary to" violation), Montanez must demonstrate

                               -3-

"that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S. Ct. 770, 787-88 (2011).

This highly deferential standard of review, see id. at 788, defeats his claim. While the trial judge limited cross-examination of Nichols about his unlicensed gun, the court did allow testimony from the police witnesses on this point and the defense freely argued the bias theory to the jury at closing. These facts distinguish this case from the clearly established Supreme Court precedent on which Montanez relies, Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (holding it a Sixth Amendment violation to cut off all inquiry into the alleged bias of a key witness). Given a difference this great, we are not persuaded that no fairminded jurist could have rejected Montanez's Sixth Amendment claim. On the contrary, in light of the police testimony and closing argument, a fairminded state judge could very well conclude that the limitation on cross-examining Nichols did not amount to a Sixth Amendment violation because the jury would not "have received a significantly different impression of [Nichols's] credibility had [Montanez's] counsel been permitted to pursue his proposed line of cross-examination." Id. at 680.

Montanez's second claim, that the dilatory production of the 911 recording violated Brady, centers on the credibility of Nichols's description of the burglar at trial, which was at odds with some details in his 911 description. On the phone, Nichols called the intruder short, whereas Montanez was of medium height; he said the man had a mustache, which Montanez lacked; and he noted the burglar was wearing a dark, bulky jacket but said nothing about a fur collar such as the one on the jacket Montanez wore. At trial, however, Nichols testified that the burglar's height was medium, there was no mustache, and the collar was unforgettable. Montanez contends that a timely disclosure of the 911 record would have supported his argument that Nichols tailored his trial identification of the culprit to fit Montanez's appearance at the "show up," and would have lent plausibility to the defense theory of mistaken identification.

Much of the parties' briefing is devoted to whether AEDPA's deferential standard of review is applicable here, but we need not delve into this issue because we hold that even a de novo review would conclude that there was no Brady violation. The prosecution's failure to produce the 911 record violates Brady only if the suppressed evidence is material, in the sense that "a reasonable probability exists that the result of the trial would have been different if the suppressed documents had been disclosed

to the defense. A reasonable probability exists if the Government's evidentiary suppression undermines confidence in the verdict." Conley v. United States, 415 F.3d 183, 188 (1st Cir. 2005) (citations omitted).

By that standard, the recording and any transcript of it are patently immaterial. The inconsistencies between Nichols's 911 description and his trial testimony about the culprit's facial hair and jacket were placed before the jury[1] through the testimony of the responding police officers about Nichols's initial description of the burglar and the official police report, and defense counsel cross-examined Nichols on the variations. There is virtually no chance that disclosure of the 911 recording would have led to altering the jury's assessment of Nichols's testimony, and no reason to consider the verdict questionable to any degree. Indeed, although pressed at oral argument, Montanez's counsel could not identify any salient difference between the description that Nichols provided on the 911 tape and the police officers' testimony about what he had said. See United States v. Paladin, 748 F.3d 438, 446 (1st Cir. 2014) ("Suppressed evidence that is cumulative of evidence presented at trial is immaterial."). In sum, the prosecution's failure to disclose the content of the 911 recording

_____

[1] The only inconsistency not presented to the jury was that of height. Nichols described the culprit as short on the 911 call, but the officers testified that his initial description of the burglar was of medium height. This inconsistency on its own, however, is minor to the point of insignificance.

does not undermine confidence in the jury's verdict, and there was no <u>Brady</u> violation.[2]

III.

One final issue merits only brief mention. Montanez also seeks review of the district court's denial of an evidentiary hearing on his <u>Brady</u> claim. The district court, though, did not issue a COA on this point, nor did Montanez seek one from us. The Commonwealth argues the necessity for a COA, which Montanez disputes. But we have no need to resolve the question of whether a COA is explicitly required to appeal the denial of an evidentiary hearing on a substantive claim for which a COA was granted. <u>See</u> <u>Gonzalez</u> v. <u>Thaler</u>, 132 S. Ct. 641, 649-51 (2012) (holding that a defective COA is a nonjurisdictional error); <u>see also</u> <u>United States</u> v. <u>Howard</u>, 381 F.3d 873, 877 n.3 (9th Cir. 2004) (assuming that a COA granted on the merits of a claim encompasses the denial of an evidentiary hearing related to the same claim). Rather, we pretermit that issue for the reason already stated: even assuming an adequate COA, we would find that Montanez deserved no evidentiary hearing on a <u>Brady</u> claim so empty as to lack merit as

---

[2] We also reject as far too speculative Montanez's suggestion that the 911 tape would have assisted his defense by pointing to two other individuals in the area whom the police might have contacted on the night of the crime. <u>See</u> <u>United States</u> v. <u>Hansen</u>, 434 F.3d 92, 102 (1st Cir. 2006) ("It is not enough for [the defendant] to show the mere possibility that an item of undisclosed information might have helped his defense, or might have affected the outcome of the trial.").

-7-

a matter of law.  <u>See</u> 28 U.S.C. § 2254(e); <u>see also</u> <u>Teti</u> v. <u>Bender</u>, 507 F.3d 50, 62-63 (1st Cir. 2007); <u>Forsyth</u> v. <u>Spencer</u>, 595 F.3d 81, 85 (1st Cir. 2010).

Affirmed.