**Jason FERRELL, Petitioner.**

v.

**Ashbel T. WALL, Respondent.**

**C.A. No. 10–244–M.**

United States District Court,
D. Rhode Island.

May 25, 2012.

George J. West, One Turks Head Place, Providence, RI, for Petitioner.

Aaron L. Weisman, Attorney General's Office, Providence, RI, for Respondent.

### MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., District Judge.

Before this Court is the "State of Rhode Island's Motion to Dismiss 'Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody'" (the "Motion to Dismiss"). (ECF No. 10.)[1] The State asserted that the nine grounds for relief contained in the "Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (the "Petition") filed by Jason Ferrell were either procedurally defaulted or properly rejected by the R.I. Supreme Court. *Id.* Mr. Ferrell countered that dismissing the Petition now would be premature and inappropriate because he presents meritorious claims and triable issues

1. To maintain consistent references, all page numbers in documents appearing in the Case Management/Electronic Case Filing ("CM/ECF") system refer to the CM/ECF page as opposed to the pagination in the original document.

that have not been procedurally defaulted. (ECF No. 21.)

This Court reviewed the briefing in this matter and heard oral argument. As explained below, the first three grounds for relief asserted by Mr. Ferrell in the Petition—Sixth Amendment, Compulsory Process Clause; Due Process, Insufficient Evidence; and Fifth Amendment, Double Jeopardy Clause—survive the Motion to Dismiss. As to the other six grounds for relief, the Motion to Dismiss is granted.

## FACTS

■ This Court reviews the facts as described in the R.I. Supreme Court decision affirming Mr. Ferrell's conviction, "supplemented with other record facts consistent with the [R.I. Supreme Court's] findings." *Shuman v. Spencer*, 636 F.3d 24, 27 (1st Cir.2011) (quoting *Yeboah–Sefah v. Ficco*, 556 F.3d 53, 62 (1st Cir.2009)). Those facts are found in *State v. Oliveira*, 774 A.2d 893, 900–03 (R.I.2001), unless otherwise noted.

On the morning of December 18, 1995, John Carpenter and Lorenzo Evans were driving in a blue Chevy Nova in Providence, R.I. Mr. Carpenter was driving and Mr. Evans was in the passenger seat. When they were on Dexter Street, in Providence's west end, Mr. Evans heard what sounded like a gunshot followed by more noises. Mr. Evans saw a black Jeep Cherokee traveling at a high rate of speed turn onto Dexter Street. The Jeep began chasing Mr. Carpenter's Chevy and the occupants of the Jeep fired shots at Messrs. Carpenter and Evans. Mr. Carpenter pulled his car to the opposite side of the road at which point the gear shift stuck, and the vehicle stalled.[2] Messrs.

Evans and Carpenter jumped out of the car.

Mr. Carpenter fell on the sidewalk,[3] while Mr. Evans landed in the road. Although the driver of the Jeep tried to run over Mr. Evans, he fled to the nearest sidewalk, hopped a fence, and ran down the side of a nearby home. While climbing over a second fence, Mr. Evans caught his jacket and pants on a picket. At that point, Mr. Evans looked up and saw two men wearing black and carrying automatic handguns get out of the Jeep. Mr. Evans saw the two men walk toward the sidewalk where Mr. Carpenter had fallen. Mr. Evans heard more gunshots. Mr. Carpenter was killed in a "brutal, gang-style murder."[4]

After Mr. Evans freed himself from the fence, he ran through yards to a nearby house and banged on the door but no one answered. Then he ran to the side of that house, looked into the street, and saw a white Ford Taurus with two occupants. Mr. Evans said that the person in the driver's seat was holding a "chrome object" in his hand that looked like a gun, and the person moved the object up and down. Mr. Evans ran, hid behind the house, and heard tires screech. When he left his hiding spot, the Taurus was gone.

Mr. Evans was stopped by the police, arrested, and taken to the police station, where he was questioned. Mr. Evans told the police that he was unable to identify the men who shot Mr. Carpenter and then he was released. The next day, however, Mr. Evans returned to the police station and identified Pedro Sanders, Gahil Oliveira, and Robert McKinney as the three occupants of the Jeep and identified Jason

---

2. *Ferrell v. Wall*, 889 A.2d 177, 180 (R.I.2005) ("*Ferrell 2005*").

3. *Ferrell v. Wall*, 971 A.2d 615, 618 (R.I.2009) ("*Ferrell 2009*").

4. *Ferrell 2005*, 889 A.2d at 180.

Ferrell and Jermaine Campbell as the two occupants of the Taurus.

The five men identified by Mr. Evans were indicted and tried in the R.I. Superior Court. At trial, the State's theory was that the murder of Mr. Carpenter and the assault on Mr. Evans were retribution for the murder of Wayne Baptista that had occurred three days earlier.[5] On December 15, 1995—a day after Mr. Baptista's murder and two days before the murder and assault at issue—three of Mr. Baptista's closest friends (Messrs. Oliveira, McKinney and Ferrell) had Mr. Baptista's nickname, "Pearl," a cross, the date of Mr. Baptista's death, and "RIP" tattooed on their right arms. Five months after events at issue, Mr. Evans was indicted for the December 15, 1995 murder of Wayne Baptista.[6]

### TRAVEL

#### 1. Trial

On May 1, 1996, Messrs. Sanders, Oliveira, McKinney, Ferrell and Campbell were indicted together for the following four crimes: (i) first-degree murder of Mr. Carpenter; (ii) conspiracy to murder Mr. Carpenter; (iii) assault with intent to murder Mr. Evans; and (iv) conspiracy to assault with intent to murder Mr. Evans. *State v. Oliveira,* 774 A.2d 893, 902 (R.I. 2001). Messrs. Oliveira, Sanders, Campbell, and Ferrell were tried together in the R.I. Superior Court in March and April of 1997; Mr. McKinney was tried at the same time, before the same trial justice, but before a separate jury. *Id.* at 902, n. 4. Messrs. Oliveira, Sanders, and McKinney were convicted of all four crimes. *Id.* at 903. Mr. Campbell was acquitted of murder and assault with intent to murder, but

convicted of both conspiracies. *Id.* Mr. Ferrell was acquitted of murder, but convicted of assault with intent to murder and both conspiracies. *Id.* On June 25, 1997, Mr. Ferrell was sentenced to an aggregate term of forty years of imprisonment, twenty years for the assault with intent to murder and ten years for each of the two conspiracies. *See Ferrell 2005,* 889 A.2d at 182; R.I.Super. Ct.Crim. Dkt. Sheet Rep., Case ID P1–1196–1547B.

#### 2. Rule 35 Motion

On October 21, 1997, Mr. Ferrell filed in the R.I. Superior Court a motion to reduce his sentence under Rule 35 of the R.I. Superior Court Rules of Criminal Procedure ("Rule 35"). *Ferrell 2009,* 971 A.2d at 620; *Oliveira,* 774 A.2d at 920 n. 26. The parties agree that Mr. Ferrell's Rule 35 motion was timely filed. *See Ferrell 2009,* 971 A.2d at 622.

#### 3. Direct Appeal

Messrs. Ferrell, Sanders, Oliveira and McKinney appealed their convictions, while Mr. Campbell did not. *Oliveira,* 774 A.2d at 903. While the appeal was pending, Mr. Ferrell filed a "Motion to Remand Case for Consideration of Newly Discovered Evidence and Newly Available Evidence" ("Motion to Remand"). *Ferrell 2005,* 889 A.2d at 182. With this motion, Mr. Ferrell submitted a videotape of Mr. Evans recanting his trial testimony, "as well as several affidavits, reports and statements intended to buttress the trustworthiness of the videotape." *Id.* On April 17, 2001, the Motion to Remand was denied. *Id.* On July 6, 2001, in *State v. Oliveira,* the R.I. Supreme Court[7] denied

---

5. *Ferrell 2005,* 889 A.2d at 181 n. 1.

6. *Ferrell 2009,* 971 A.2d at 617. Mr. Evans was subsequently tried and acquitted. *Ferrell v. Wall,* No. PM–02–3635, 2005 WL 373479, at *2 (R.I.Super. Feb. 2, 2005).

7. The R.I. Superior Court justice who presided over the trial was a member of the R.I. Supreme Court during the direct appeal and Mr. Ferrell's two post-conviction relief application appeals, but she did not participate in

all of the direct appeals and affirmed the convictions of Messrs. Ferrell, Sanders, Oliveira, and McKinney. 774 A.2d at 893.

### 4. Second Rule 35 Motion

As discussed below, in the direct appeal, the R.I. Supreme Court mistakenly stated that Mr. Ferrell's Rule 35 motion was withdrawn and then indicated that it would not address the issue of whether the consecutive *sentences* for conspiracy placed Mr. Ferrell in double jeopardy until such a motion was filed. *State v. Oliveira*, 774 A.2d at 920 (emphasis added).

Shortly after the R.I. Supreme Court made this statement, Mr. Ferrell filed another Rule 35 motion. (ECF No. 21–1 at 7–8.) In 2009, the R.I. Supreme Court acknowledged its error and stated that Mr. Ferrell's first Rule 35 "motion to reduce his sentence was never withdrawn." *Ferrell 2009*, 971 A.2d at 622.

### 5. First Post–Conviction Relief Application

On July 3, 2002, Mr. Ferrell filed in the R.I. Superior Court his first application for post-conviction relief pursuant to R.I. Gen. Laws § 10–9.1–1 *et seq.*, seeking relief from his convictions on eight distinct grounds. (ECF No. 1–1.) [8] After a hearing that occupied five days, the motion justice granted Mr. Ferrell's post-convic-

tion relief application and vacated his convictions and sentences. *See Ferrell 2005*, 889 A.2d at 182–83. The motion justice's decision granting this post-conviction relief application, however, analyzed only the following two counts: *Count I*, newly discovered evidence—a videotape of Mr. Evans recanting his identification at trial of Mr. Ferrell—required that his convictions be vacated; and *Count IV*, ineffective assistance of counsel. *Id.; Ferrell v. Wall*, No. PM–02–3635, 2005 WL 373479 (R.I.Super. Feb. 2, 2005).[9] The motion justice found Mr. Evans' recantation credible "when considered within the totality of the circumstances" and held that Mr. Ferrell's claim of ineffective assistance based on Rule 16 had merit, but his ineffective assistance claim based on double jeopardy did not. *Ferrell v. Wall*, 2005 WL 373479, at *1, *9.

The State appealed this decision to the R.I. Supreme Court. *Ferrell 2005*, 889 A.2d at 180, 183. The R.I. Supreme Court reversed the motion justice's grant of post-conviction relief and reinstated Mr. Ferrell's convictions. *Id.* at 180. Regarding the recantation evidence, the R.I. Supreme Court held that the motion justice had "insufficient evidence to properly determine the credibility of [Mr.] Evans' recantation;" the motion justice "committed clear error in finding [Mr. Evans'] recanta-

those appeals. *See State v. Oliveira*, 774 A.2d 893, 926 (R.I.2001); *Ferrell 2005*, 889 A.2d at 192; *Ferrell 2009*, 971 A.2d at 626.

**8.** The application for post-conviction relief was not presented to the trial justice because she was no longer a member of the Superior Court; instead, the application was presented to the R.I. Superior Court Associate Justice presiding over the Formal and Special Cause Calendar when the petition was presented (the "motion justice"). *See Ferrell v. Wall*, No. PM–02–3635, 2005 WL 373479, at *1 n. 1 (R.I.Super. Feb. 2, 2005).

**9.** The motion justice did not address the following six other claims of constitutional error contained in the application for post-conviction relief: *Count II*, denied right to a fair trial; *Count III*, denied right to present a defense; *Count V*, multiple convictions and sentences for a single conspiracy violate the prohibition against double jeopardy; *Count VI*, limited on cross-examination of Lorenzo Evans; *Count VII*, limitation on Debra Ann Baptista's alibi testimony; and *Count VIII*, denial of the motion to sever his case from his co-defendants Messrs. Oliveira and Sanders. (*Id.;* ECF No. 1–1.)

tion credible;" and the motion justice's admission of the recantation testimony was an abuse of discretion. *Id.* at 188, 190. On the ineffective assistance of counsel claim based on trial counsel's violation of Rule 16, the R.I. Supreme Court found (that claim failed because Mr. Ferrell did not suffer the requisite prejudice). *Id.* at 191. Regarding Mr. Ferrell's claim of ineffective assistance of counsel based on the failure of trial counsel to pursue a double jeopardy defense, the R.I. Supreme Court noted that Mr. Ferrell chose not to appeal the motions justice's determination that this claim was "meritless." *Id.* at 190 n. 6.

### 6. Second Post–Conviction Relief Application

In November 2006, Mr. Ferrell filed a motion to amend his application for post-conviction relief. *Ferrell 2009*, 971 A.2d at 618. On January 25, 2007, Mr. Ferrell filed a Second Amended Complaint for Post–Conviction Relief containing the same eight counts as his original application, as well as four additional counts. (ECF No. 1–4.) [10]

The motion justice issued a decision from the bench on both the second application for post-conviction relief and a Rule 35 motion. (ECF No. 1–5.) The motion justice granted the application for post-conviction relief because trial counsel's representation of Mr. Ferrell, while simultaneously representing his co-defendant Mr. Oliveira in another matter, constituted ineffective assistance of counsel at a con-

stitutional level. *Id.* at 17–33.[11] As to all other issues raised in the post-conviction relief application, the motion justice noted his agreement "with the State that issues raised by Mr. Ferrell with the exception of the conflict of interest issue, have been raised and argued earlier." *Id.* at 17. Regarding the Rule 35 motion to reduce, while the motion justice found himself "foreclosed from addressing the illegality of the conspiracy sentences," *id.* at 8, he granted the motion based on a leniency argument and reduced Mr. Ferrell's aggregate forty year sentence to a total of twenty years as follows: sentence on Count 3 (assault with intent to murder Mr. Evans) reduced from twenty years in prison to ten years in prison; and sentence on Count 4 (conspiracy to assault with intent to murder Mr. Evans) reduced from ten years in prison to ten years of probation. *Id.* at 17, 33–36; R.I.Super. Ct.Crim. Dkt. Sheet Rep., Case ID P1–1196–1547B.

The State appealed this decision and filed a writ of certiorari with respect to the sentence reduction. *Ferrell 2009*, 971 A.2d at 619. Mr. Ferrell cross-appealed, contending "that the motion justice made six distinct errors, any one of which would entitle him to postconviction relief." *Id.* On June 8, 2009, the R.I. Supreme Court issued its decision: the motion justice's grant of post-conviction relief was reversed and Mr. Ferrell's convictions and sentences were reinstated. *Id.* at 622, 626. The R.I. Supreme Court held that the motion justice erred in hearing Mr. Fer-

---

**10.** The four additional counts asserted are: *Count IX*, ineffective assistance in connection with evidence pertaining to a radio broadcast; *Count X*, ineffective assistance due to trial counsel's concurrent representation of co-defendant Mr. Oliveira in another matter; *Count XI*, insufficient evidence supporting the conviction for assault with intent to murder; and *Count XII*, his continued incarceration violates his right to due process. *Id.*

**11.** After noting that "the statute governing the presentation of claims for post-conviction relief directs that all possible claims be asserted at one time when the person brings his initial petition, discretion is allowed to the Court in the interest of justice to consider a claim that was not raised initially although perhaps it could have been," the motion justice addressed the claim of ineffective assistance based on a conflict of interest. *Id.* at 18.

rell's second application for post-conviction relief because review was barred by both R.I. Gen. Laws § 10–9.1–8[12] and res judicata. *Id.* at 622. As to Mr. Ferrell's cross-appeal regarding his application for post-conviction relief, the R.I. Supreme Court held that all such issues were properly denied by the Superior Court. *Id.* at 623–26. Regarding the motion justice's decision on the Rule 35 sentence reduction motion, the R.I. Supreme Court held that it was improper for the motion justice to have reached the Rule 35 motion: the motion justice should have stopped once he granted post-conviction relief. *Id.* at 623. In light of its reversal of the grant of post-conviction relief, the R.I. Supreme Court found it appropriate for a hearing to be held on the Rule 35 motion and therefore remanded the case to the Superior Court for a hearing. *Id.*

Notably, in this 2009 opinion, the R.I. Supreme Court acknowledged the error it made in its 2001 decision on Mr. Ferrell's direct appeal. In 2001, the R.I. Supreme Court incorrectly stated that Mr. Ferrell's Rule 35 motion had been "withdrawn." *State v. Oliveira,* 774 A.2d 893, 920 n. 26 (R.I.2001). In 2009, the R.I. Supreme Court acknowledged "it appears that the sentence-reduction motion was not withdrawn." *Ferrell 2009,* 971 A.2d at 622.

### 7. *Remand of Rule 35 Motion*

Upon remand to the Superior Court, Mr. Ferrell's Rule 35 motion was heard by another motion justice (the "second motion justice").[13] In a bench decision delivered on March 9, 2011, the second motion justice upheld the original sentence given to

Mr. Ferrell by the trial justice, albeit based on a different rationale than the trial justice had articulated at the time of the original sentencing. (ECF No. 21–1 at 22, 25–26.) The second motion justice did not agree with the trial justice's finding that Mr. Ferrell was "the leader of the pack," but she found that 1ms original sentence "was appropriate" and "was not disparate from sentences imposed for similar offenses." (ECF No. 21–1 at 20, 22.)

### 8. *Federal Court Habeas Petition*

On June 4, 2010, Mr. Ferrell, pro se, filed a Petition for Writ of Habeas Corpus in this Court containing nine grounds for relief. (ECF No. 1.) Mr. Ferrell also filed a Motion to Appoint Counsel. (ECF No. 4) The motion seeking appointed counsel was granted by United States Magistrate Judge David L. Martin, who stated that "this is one of those rare § 2254 cases where the appointment of counsel is warranted." (ECF No. 5 at 3.)

On August 16, 2010, the State responded to the Petition by filing the instant Motion to Dismiss. (ECF No. 10.) In the Motion to Dismiss, the State requested that this Court await the U.S. Supreme Court's decision in the case of *Wall v. Kholi,* No. 09–868. On March 7, 2011, the U.S. Supreme Court issued its opinion in *Kholi,* holding that sentence reduction motions filed under Rule 35 are "collateral review" pursuant to 28 U.S.C. § 2244(d)(2) and therefore toll the on year limitations period set forth in 28 U.S.C. § 2244(d)(1)(A). *Wall v. Kholi,* 562 U.S. ——, 131 S.Ct. 1278, 179 L.Ed.2d 252 (2011). In light of the Su-

---

**12.** In general, this statute bars applicants from raising grounds for relief in a subsequent application that were waived or adjudicated in an earlier application.

**13.** In *Ferrell 2009,* when the R.I. Supreme Court remanded the "case for to the Superior

Court for a proper hearing on the sentence-reduction motion," 971 A.2d at 623, it indicated that the motion justice had retired so the matter would be assigned to another Superior Court justice. *Id.* at n. 5.

preme Court's ruling in *Kholi*, the Petition at issue was timely filed.

On July 14, 2011, Mr. Ferrell, through counsel, objected to the Motion to Dismiss. (ECF No. 21.) On September 8, 2011, this Court heard oral argument on the Motion to Dismiss, with Mr. Ferrell in attendance.

### STANDARD OF REVIEW

 This Court is keenly aware of the limited review available to Mr. Ferrell. Both U.S. Supreme Court precedent, *see, e.g., Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011), and the Congressional mandate contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, restrict federal court review of state court convictions and sentences. The AEDPA, as codified in § 2254(d)'s limited review, "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment)). However, even though the "AEDPA imposes a requirement of deference to state court decisions, [federal courts] can hardly defer to the state court on an issue that the state court did not address." *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001).

 Before a federal court can reach the merits of a habeas claim, the petitioner must satisfy "certain preliminary criteria." *McCambridge v. Hall*, 303 F.3d 24, 34 (1st Cir.2002). The petitioner "must have fairly presented his claims to the state courts and must have exhausted his state court remedies." *Id.* (citing 28 U.S.C. § 2254(b)(1)(A)). In addition, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism." *Id.* at 730, 111 S.Ct. 2546. This doctrine does not bar review, however, where the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750, 111 S.Ct. 2546.

 If a federal court reaches the merits of a habeas claim, the standard of review applicable to a state court's decision depends on whether the state court considered and rejected the petitioner's claim on the merits. *See, e.g., Healy v. Spencer*, 453 F.3d 21, 25 (1st Cir.2006). Where a claim "was adjudicated on the merits in State court proceedings," a federal court may grant habeas relief only if the State court's "adjudication of the claim" either

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Factual determinations made by the State court are presumed to be correct, with the petitioner bearing "the burden of rebutting the presumption or correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If the state court did not consider and reject the petitioner's claim on the merits,

then the federal court's review of that claim is de novo. *Norton v. Spencer,* 351 F.3d 1, 5 (1st Cir.2003).

## ANALYSIS

Mr. Ferrell's Petition contains nine grounds for relief: *ground one,* the state trial justice's improper limitation of the testimony of defense alibi witness Debra Ann Baptista violates Mr. Ferrell's Sixth Amendment compulsory process rights; *ground two,* the insufficient evidence to support Mr. Ferrell's two conspiracy convictions violates his due process rights; *ground three,* his consecutive sentences on the two conspiracy counts violate the Fifth Amendment's prohibition against double jeopardy; *ground four,* the state trial justice's limitation on the questioning of Lorenzo Evans violates Mr. Ferrell's Sixth Amendment confrontation clause rights; *grounds five, six, seven, and eight,* ineffective assistance of counsel; and *ground nine,* due to Lorenzo Evans' recantation, Mr. Ferrell's convictions violate his due process rights.

In its Motion to Dismiss, the State sought dismissal of all nine grounds in the Petition because those claims have been either procedurally defaulted or properly rejected by the R.I. Supreme Court. As explained below, the first three grounds of Mr. Ferrell's Petition survive the State's Motion to Dismiss, while the latter six do not.

### 1. *Sixth Amendment—Compulsory Process Clause*

 The Sixth Amendment's Compulsory Process Clause guarantees criminal defendants "compulsory process for obtaining witnesses in [their] favor." U.S. Const. Amend. VI.[14] However, "the constitutional right to compulsory process is not absolute." *Chappee v. Vose,* 843 F.2d 25, 28 (1st Cir.1988). "The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system...." *Id.* (quoting *United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)).

In ground one of the Petition, Mr. Ferrell asserts that his Sixth Amendment right to compulsory process was violated by the trial justice's refusal to allow his alibi witness, Debra Ann Baptista, to testify about her contact with Mr. Ferrell during a time period later than the one disclosed during discovery. The trial justice did not permit Debra Ann Baptista to testify about her post–11:15 a.m. contact with Mr. Ferrell on December 18, 1995, the day of the murder and assault with intent to murder at issue. *Ferrell 2005,* 889 A.2d 177, 181. Mr. Ferrell argues that Debra Ann Baptista's testimony regarding Mr. Ferrell's whereabouts after 11:15 a.m. is relevant because she stated that Mr. Ferrell returned to her home sometime after 11:15 a.m. and remained there until approximately 11:35 a.m. *Id.* The State's medical examiner testified that Mr. Carpenter's death occurred at approximately 11:27 a.m. *Id.* Mr. Carpenter's death occurred on the West Side of Providence, while Debra Ann Baptista's home is on the East Side of Providence.[15] If Debra Ann Baptista's testimony about her contact

**14.** The Sixth Amendment is applicable to the States through the Fourteenth Amendment. *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

**15.** This Court takes judicial notice that Mr. Carpenter's death occurred near the intersection of Division and Dexter Streets, on the

West Side of Providence, while Debra Ann Baptista's home, at 17 Evergreen Street, is on the East Side of Providence, approximately five miles away. *See, e.g., Navarro–Ayala v. Hernandez–Colon,* 951 F.2d 1325, 1327 (1st Cir.1991) (taking judicial notice of geographic locations).

with Mr. Ferrell from 11:15 a.m. to 11:35 a.m. were believed, then Mr. Ferrell asserts that he could not have been present on the opposite side of the city at the time of Mr. Carpenter's death.

The State moved to dismiss this ground of the Petition on the basis that the R.I. Supreme Court's affirmance of the trial justice's exclusion of the alibi testimony "can be construed as resting on an adequate independent state ground of procedural default" and therefore cannot be considered by this Court. (ECF No. 10 at 8.) Mr. Ferrell counters that he did not "procedurally default" this Sixth Amendment constitutional claim because the R.I. Supreme Court's decision upholding the trial justice's preclusion of the testimony "does not possess any of the characteristics of a procedural default." (ECF No. 21 at 16–17.) Further, Mr. Ferrell argues that this Court should review this claim de novo. *Id.* at 20.

At oral argument, the State conceded that the compulsory process claim was not amenable to summary dismissal and asked that it be allowed to provide further briefing. This Court would be well served by further briefing from both parties on this claim. As such, the State's Motion to Dismiss as to ground one of the Petition is DENIED as moot. This Court will enter an order setting forth a briefing schedule on this ground.

### 2. *Due Process—Insufficient Evidence*

Both the Fifth Amendment and the Fourteenth Amendment protect against the deprivation "of life, liberty, or property, without due process of law." U.S. Const. Amends. V, XIV. The U.S. Supreme

Court has explained that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

In ground two of the Petition, Mr. Ferrell claims that his Fifth and Fourteenth Amendment rights to due process were violated because there was insufficient evidence to support his *two* conspiracy convictions.[16] The State contends that the R.I. Supreme Court's explanation in *State v. Oliveira*, 774 A.2d 893, 918–19 (R.I.2001), as to why the trial court properly denied Mr. Ferrell's motion for judgment of acquittal was not an unreasonable application of clearly established U.S. Supreme Court law and therefore Mr. Ferrell is not entitled to habeas relief on this ground. (ECF No. 10 at 8–9.) Mr. Ferrell responds with two arguments: (i) the R.I. Supreme Court's affirmance of the sufficiency of the evidence to support *two* conspiracy convictions was an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and (ii) in the alternative, the R.I. Supreme Court reached a decision contrary to the U.S. Supreme Court on "materially indistinguishable facts" when the R.I. Supreme Court found *two* conspiracies in *Oliveira* while the U.S. Supreme Court found only *one* in *Braverman v. U.S.*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). (ECF No. 21 at 14–16.) Both of Mr. Ferrell's arguments stem from 28 U.S.C. § 2254(d)(1), his first from the "unreasonable applica-

---

**16.** Mr. Ferrell does not argue in the Petition that there was insufficient evidence to support his conviction for assault with intent to murder, nor does he argue that there was not enough evidence to support *one* conspiracy conviction, so this Court does not review those issues.

tion" clause and his second from the "contrary to" clause.

In 2001, the R.I. Supreme Court rejected Mr. Ferrell's claim of insufficient evidence to support all of his convictions in *State v. Oliveira*, 774 A.2d at 918–19. In reviewing the sufficiency of the evidence against Mr. Ferrell, the R.I. Supreme Court quoted the trial justice's review of the evidence:

> Under our law, the gravamen of a criminal conspiracy is a common agreement between one or more persons to do an unlawful act. The Supreme Court has recognized that it is usually very difficult to prove in complete detail the explicit terms of *an agreement*. The existence of *an agreement* to enter into a criminal enterprise or to commit a criminal act can be established by inference, that is, the goals of the conspirators can be inferentially established by proof of the relations, conduct, circumstances and actions of the parties. Viewed in the light most favorable to the State, there are two cars on Division Street on December 18th, 1995, when the shooting starts. One car is the black Jeep which contains defendants Oliveira, [M]cKinney and Sanders. That Jeep turns the corner, enters onto Dexter Street. The white Taurus waits at the corner. Lorenzo Evans runs through the yards, comes out on the back street, which is Harrison Street, and that car has backed up and is face—and is laying in wait—its occupants, one with a gun, are laying in wait for Lorenzo Evans. That is a chain of events, if believed by a jury, that can substantiate *an agreement* between the parties.

> Under our law, once a conspiracy has been established, all members of the unlawful agreement are jointly and sever[al]ly liable for the acts of the conspirators.

*Oliveira*, 774 A.2d at 919 (emphases added). The R.I. Supreme Court then found that "because a reasonable juror could have found [Mr.] Ferrell guilty beyond a reasonable doubt of all three counts of which he was convicted on a theory of vicarious liability, we find that the trial justice did not err in refusing to acquit [Mr.] Ferrell." *Id.*

In *Oliveira*, the R.I. Supreme Court did not distinguish between the evidence supporting Mr. Ferrell's conviction for conspiracy to murder Mr. Carpenter and the evidence supporting Mr. Ferrell's conviction for conspiracy to assault with intent to murder Mr. Evans. *Id.* at 918–19. Instead, the R.I. Supreme Court quoted the trial justice's remarks, wherein she thrice referenced "an agreement" but did not once reference multiple agreements or multiple conspiracies. *Id.* at 919.

On habeas review, Mr. Ferrell "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Further, this Court must "rehearse the facts in the light most compatible with the jury's verdict, consistent with record support." *Leftwich v. Maloney*, 532 F.3d 20, 21 (1st Cir.2008) (citing *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781). And the factual determinations made by the state court are presumed to be correct. *Id.* (citing 28 U.S.C. § 2254(e)(1)).

The State's argument has not convinced this Court that the R.I. Supreme Court's affirmance of the trial justice's denial of the motion for acquittal pertaining to the *two* conspiracy convictions was not an unreasonable application of clearly established U.S. Supreme Court law. Further, this Court's review of the materials sub-

mitted in connection with the sufficiency of the evidence supporting Mr. Ferrell's *two* conspiracy convictions reveals that neither the State nor Mr. Ferrell focused on the record evidence supporting the *two* conspiracy convictions.[17] Therefore, the issue of whether Mr. Ferrell's due process rights were violated because there was insufficient evidence to support his *two* conspiracy convictions must be briefed further by the parties. As such, the State's Motion to Dismiss ground two of the petition is DENIED.

### 3. *Fifth Amendment—Double Jeopardy Clause*

 The Fifth Amendment's Double Jeopardy Clause prohibits a person from being put in jeopardy twice for the same crime: no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.[18] The Double Jeopardy Clause affords protection in three distinct situations: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Jackson v. Coalter*, 337 F.3d 74, 81 (1st Cir.2003) (quoting *United States v. Ortiz–Alarcon*, 917 F.2d 651, 653 (1st Cir.1990)). Here, the third of those situations, the Double Jeopardy Clause's protection "against multiple punishments for the same offense," is at issue. *See, e.g., Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). As explained by the U.S. Supreme Court in 1873: "we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." *Ex Parte Lange*, 85 U.S. 163, 173, 18 Wall. 163, 21 L.Ed. 872 (1873).

In addition to being convicted of assault with intent to murder Mr. Evans, Mr. Ferrell was convicted of both conspiracy to murder Mr. Carpenter and conspiracy to assault with intent to murder Mr. Evans. Mr. Ferrell was sentenced to ten years for each of the two conspiracy convictions, to be served consecutively. In ground three of the Petition, Mr. Ferrell claims that his Fifth Amendment constitutional right not to be subjected to double jeopardy is violated by his two consecutive sentences for conspiracy because there was not proof of two separate conspiracies.[19] In its Motion to Dismiss, the State contends that this ground for relief is "procedurally defaulted" due to the R.I. Supreme Court's deter-

---

**17.** As noted above, the issue of whether or not sufficient evidence supported *one* conspiracy conviction is not before this Court.

**18.** The Fifth Amendment's Double Jeopardy Clause is "applicable to the States through the Fourteenth Amendment." *Monge v. California*, 524 U.S. 721, 727, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998).

**19.** Mr. Ferrell claims that his Fifth Amendment constitutional right not to be subjected to double jeopardy was violated because he is being punished twice for what he claims was, at best, a single conspiracy to commit two unlawful acts, not two conspiracies. In support of this claim, Mr. Ferrell cites both the

U.S. Supreme Court in *Braverman v. United States*, 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942) ("The conspiracy is the crime, and that is one, however diverse its objects") (citations omitted) and the R.I. Supreme Court in *State v. Gilman*, 110 R.I. 207, 291 A.2d 425, 429 (1972) ("it is well settled that conspiracy is a single offense even though the agreement upon which the charge is founded envisions the performance of several criminal offenses or acts"). The State claims that Mr. Ferrell committed two separate and independent conspiracies and therefore neither the two convictions nor the two separate sentences represent a double jeopardy violation.

mination in *State v. Oliveira* that this issue should have been raised pre-trial pursuant to Rule 12(b)(2) of the R.I. Superior Court Rules of Criminal Procedure ("Rule 12(b)"). (ECF No. 10 at 9.) In response, Mr. Ferrell contends that this claim has not been procedurally defaulted and this Court should review it de novo. (ECF No. 21 at 5–14.)

### A. Adequate and Independent State Ground Doctrine

Prior to reaching the merits of Mr. Ferrell's double jeopardy sentencing claim, this Court first must ascertain whether this claim has been defaulted based on the "adequate and independent state ground doctrine." *Walker v. Martin*, 562 U.S. ——, 131 S.Ct. 1120, 1127, 179 L.Ed.2d 62 (2011). If a state court reviews a claim based "on a state law ground that is independent of the federal question and adequate to support the judgment," then habeas review is precluded. *Beard v. Kindler*, 558 U.S. 53, 130 S.Ct. 612, 615, 175 L.Ed.2d 417 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker*, 131 S.Ct. at 1127. If the petitioner's federal claim was not reached by the state court due to a failure to meet state procedural requirements, then the petitioner "has deprived the state courts of an opportunity to address those claims in the first instance" and therefore federal review generally is precluded. *Coleman*, 501 U.S. at 731–32, 111 S.Ct. 2546. There are exceptions, however, providing for habeas review where the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of jus-

tice." *Id.* at 750, 111 S.Ct. 2546; *McCambridge v. Hall*, 303 F.3d 24, 34 (1st Cir. 2002). To ascertain whether Mr. Ferrell's double jeopardy sentencing claim has been defaulted, this Court applies the two prong test set forth by the U.S. Supreme Court in *Walker v. Martin:* "absent showings of cause and prejudice, federal habeas relief will be unavailable when (1) a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." 131 S.Ct. at 1127 (internal quotation marks and citations omitted).

Despite the fact that Mr. Ferrell's case has been before the R.I. Supreme Court at least four times, Mr. Ferrell's claim that consecutive conspiracy sentences violate his constitutional right against double jeopardy has never been reviewed on the merits. The first prong of *Walker* requires this Court to ascertain whether the state court failed to address Mr. Ferrell's double jeopardy sentencing claim because of a failure to comply with "a state procedural requirement." *Id.* To accomplish this task, a review of the complex trail that Mr. Ferrell's double jeopardy sentencing claim traversed in state court is necessary. With a procedural history as convoluted, complicated and lengthy as that of Mr. Ferrell's double jeopardy sentencing claim, this Court must ensure that the federal constitutional claim was not lost in the state procedural morass. *See id.* at 1130–31. To hold otherwise would allow convoluted form to preclude substantive constitutional review.

### B. Travel of Double Jeopardy Sentencing Claim

On October 21, 1997, Mr. Ferrell challenged his double conspiracy sentences by filing a Rule 35 Motion to Reduce Sentence. *State v. Oliveira*, 774 A.2d 893, 920

n. 26 (R.I.2001). Mr. Ferrell also raised the issue of whether he was placed in double jeopardy due to his consecutive conspiracy sentences in his direct appeal.[20] *See Oliveira*, 774 A.2d at 920, 920 n. 25 ("[Mr.] Ferrell raised this issue and fully briefed it on appeal."). In his direct appeal, he pressed the Fifth Amendment's protection against multiple punishments for the same offense. Br. of Def./Appellant, No. 99–0007, 2000 WL 34534010, at *37–40 (R.I. Jul. 14, 2000). At the conclusion of the double jeopardy section of his brief on direct appeal, Mr. Ferrell included a footnote explaining that this claim of an unlawful *sentence* may need to be litigated on a Rule 35 motion, but he briefed it on direct appeal because he was also challenging the sufficiency of the evidence to prove conspiracy and thought the R.I. Supreme Court might wish to handle the related issues at the same time. *Id.* at *40, n. 18 (emphasis added).

In July 2001, in its opinion on Mr. Ferrell's direct appeal, the R.I. Supreme Court stated that it "has repeatedly held that, in the absence of a motion and determination pursuant to Rule 35, we will not consider issues involving the legality or propriety of a sentence." *Oliveira*, 774 A.2d at 920. In a footnote, the R.I. Supreme Court indicated that although Mr. Ferrell had filed a Rule 35 motion on October 21, 1997, "[t]hat motion was passed three times and, then, ultimately withdrawn." *Id.* at n. 26. The R.I. Supreme Court's statement that the Rule 35

motion was "ultimately withdrawn" was incorrect as Mr. Ferrell's Rule 35 motion was pending in the R.I. Superior Court when the R.I. Supreme Court issued its opinion on Mr. Ferrell's direct appeal. *Compare id.* (Rule 35 motion "withdrawn") *to Ferrell 2009*, 971 A.2d 615, 622 (Rule 35 motion "not withdrawn").

Because it thought—incorrectly—that Mr. Ferrell's Rule 35 motion had been withdrawn, the R.I. Supreme Court "decline[d] to consider the constitutionality of the *sentence* imposed upon him by the trial justice," and indicated that it would not do so "until such time as [Mr.] Ferrell files a motion to correct or reduce that sentence pursuant to Rule 35." *Oliveira*, 774 A.2d at 920 (emphasis added). In addition to this erroneous reason for not reaching the constitutionality of his sentence, the R.I. Supreme Court continued on to state that pursuant to Rule 12(b)(2), Mr. Ferrell waived the defense of double jeopardy because he neither raised pre-trial nor did the trial justice permit it to be untimely raised. *Id.* The R.I. Supreme Court concluded by stating that Mr. Ferrell's "failure to present a procedurally proper double jeopardy defense constitutes a waiver thereof under Rule 12(b)(2)." *Id.*[21]

In October 2001, Mr. Ferrell filed another Rule 35 motion entitled "Motion to Correct Illegal Sentence and to Reduce Sentence." There, Mr. Ferrell argued that he "received consecutive *sentences* for con-

---

**20.** Mr. Ferrell's direct appeal was filed in July of 1997. (ECF No. 21–1 at 7.)

**21.** In an attempt to explain this seemingly inconsistent rationale by the Supreme Court (*i.e.*, a long-standing requirement that allegations of an illegal sentence must be brought up pursuant to Rule 35, and then its holding that the argument was waived because it was not raised pursuant to a pre-trial Rule 12(b)(2) motion), Mr. Ferrell stated: "The only harmonious reasoning of the two state-

ments is that, although a direct appeal of the issue would be unavailing in light of the failure to file a Rule 12(b)(2) motion, the matter could be considered on a motion to correct an illegal sentence." *Ferrell v. Wall*, No.2007–92–A, Br. of Pet'r/Cross–Appellant Jason Ferrell, 2008 WL 7149977, at *23 n. 9 (R.I. July 22, 2008). This Court agrees that this is the only logical way to read the R.I. Supreme Court's opinion.

spiracy based upon evidence which proved a single conspiratorial agreement." (Emphasis added.)

In July 2002, Mr. Ferrell filed his first Application for Post–Conviction Relief in R.I. Superior Court. (ECF No. 1–1.) This first post-conviction relief application contained eight counts and asserted, among other things, that his convictions were obtained in violation of his state and federal constitutional rights. *Id. Inter alia,* in Count I, he alleged that "[his] convictions rest on the testimony of Lorenzo Evans," testimony that was recanted after trial. *Id.* at 6. In Count V, Mr. Ferrell argued that "[m]ultiple convictions and sentences for a single conspiracy violated the prohibitions against double jeopardy." *Id.* at 8.

In February 2005, in the R.I. Superior Court decision granting Mr. Ferrell's first postconviction relief application, the motion justice focused primarily on the recanted testimony, while he also addressed two claims of ineffective assistance of counsel. *Ferrell v. Wall,* No. PM–02–3635, 2005 WL 373479 (R.I.Super. Feb. 2, 2005). Briefly, at the end of the decision, the motion justice addressed double jeopardy, but *only* as it related to an *ineffective assistance of counsel* claim. *Id.* at *10. After referencing the R.I. Supreme Court's erroneous statement in *Oliveira* that Mr. Ferrell's Rule 35 motion had been withdrawn, the motion justice concluded that the *"ineffective counsel claim* grounded on the failure of the attorney to raise a double jeopardy defense fails." *Id.* (emphasis added). However, nowhere in the decision did the motion justice refer to the Count V double jeopardy *sentencing* claim contained in Mr. Ferrell's first post-convic-

tion relief application. *Id.* The State appealed. *Ferrell 2005,* 889 A.2d 177, 180.

In December 2005, in its opinion on the State's appeal of the R.I. Superior Court's grant of the first post-conviction relief application, the R.I. Supreme Court noted that Mr. Ferrell did not appeal the motion justice's denial of his *ineffective assistance* claim based on the failure to pursue a double jeopardy defense. *Id. at* 190 n. 6. However, nowhere in the R.I. Supreme Court's 2005 opinion does it acknowledge that Mr. Ferrell raised a double jeopardy *sentencing* claim in his post-conviction application. *Id.*

In January 2007, Mr. Ferrell filed a "Second Amended Complaint for Postconviction Relief" containing the same counts in his original application, including his Count V double jeopardy sentencing claim, along with four additional counts. (ECF No. 1–4.) In a bench decision granting in part both Mr. Ferrell's second application for post-conviction relief and his Rule 35 motion, the motion justice made several statements regarding double jeopardy and Mr. Ferrell's Rule 35 motion. (ECF No. 1–5 at 5–8.)

The motion justice first addressed Mr. Ferrell's Rule 35 motion. *Id.* at 5. He noted the R.I. Supreme Court's erroneous statement in *Oliveira* that Mr. Ferrell's Rule 35 motion had been withdrawn. *Id.* at 5–7. Next, the motion justice appears to have expressed his belief that "too much time has gone by for the consideration of a Rule 35 motion." *Id.* The motion justice concluded that, "It seems to me, therefore, that I am foreclosed from addressing the illegality of the conspiracy sentences and, therefore, will not do so." *Id.* at 8.[22] However, the motion justice

---

**22.** Towards the end of the hearing, Mr. Ferrell's counsel sought clarification of the motion justice's ruling on the double jeopardy

sentencing argument pressed in the Rule 35 motion: "It was our intention to raise the double jeopardy contention in the context of

proceeded to address the leniency argument in Mr. Ferrell's Rule 35 motion and reduced his sentence on count three from twenty to ten years and his sentence on count four to zero years in prison and ten years on probation. *Id.* at 9–17.

Then the motion justice moved on to Mr. Ferrell's second post-conviction relief application. *Id.* at 17–33. The motion justice found that all issues save for ineffective assistance based on a conflict of interest had been raised and argued earlier. *Id.* at 17. Due to this conclusion, the motion justice did not discuss Mr. Ferrell's Count V double jeopardy sentencing claim. The motion justice held that Mr. Ferrell's trial counsel's "conduct was absolutely inexcusable" and constituted a "constitutional defect that is offensive to the Sixth Amendment." *Id.* at 32–33. He granted Mr. Ferrell's second post-conviction application and set aside Mr. Ferrell's convictions and sentences.

The State appealed the grant of post-conviction relief and petitioned for a writ of certiorari regarding the sentence reduction. *Ferrell 2009*, 971 A.2d at 619. Mr. Ferrell cross-appealed, arguing that numerous grounds for post-conviction relief "were denied improperly." *Id.*

In July 2008, in his brief cross-appealing the motion justice's decision on both his second post-conviction relief application and his Rule 35 motion, Mr. Ferrell argued that the motion justice's conclusion that he was foreclosed from addressing Mr. Ferrell's double jeopardy sentencing argument was erroneous. *Ferrell v. Wall*, No.2007–92–A, Br. of Pet'r/Cross–Appellant Jason Ferrell, 2008 WL 7149977, at *21–26 (R.I. July 28, 2008). Further, Mr. Ferrell maintained that although he was convicted of two conspiracies, there was no

evidence of two conspiracies and therefore he has "been twice placed in jeopardy." *Id.* at *24–26.

In June 2009, the R.I. Supreme Court issued its opinion on the motion justice's decision on Mr. Ferrell's second post-conviction relief application and Rule 35 motion. *Ferrell 2009*, 971 A.2d 615. Regarding the Rule 35 motion, the R.I. Supreme Court acknowledged its 2001 error regarding the pendency of Mr. Ferrell's Rule 35 motion in *Oliveira*. *Id.* at 622. The R.I. Supreme Court then took "great issue with the fact that the motion justice even reached the [Rule 35] sentence-reduction motion." *Id.* at 623. The R.I. Supreme Court deemed it "improper for the motion justice to consider [Mr. Ferrell's] Rule 35 motion for a sentence reduction in conjunction with [Mr.] Ferrell's application for post-conviction relief when he found in favor of applicant on the post-conviction relief application." *Id.* The R.I. Supreme Court did not address the merits of Mr. Ferrell's Rule 35 double jeopardy sentencing argument. *Id.* at 615–26.

Regarding the second post-conviction relief application, the R.I. Supreme Court reversed the grant of relief because the motion justice was barred from hearing the second application by statute and by res judicata. *Id.* at 622. As to Mr. Ferrell's cross-appeal of the motion justice's denial of relief based on several issues raised in his post-conviction application, the R.I. Supreme Court found that the issues "were properly denied by the motion justice, either on their merits or because they had already been considered and rejected by the motion justice or by this Court on review." *Id.* at 623. As to Mr. Ferrell's post-conviction application

---

Rule 35 based on a *sentence*—and, so, is my understanding, Judge, that ... that you are saying that we are therefore barred, you're

denying relief on that basis?" *Id.* at 41 (emphasis added). The motion justice responded, "I think that is pretty much what I said." *Id.*

double jeopardy claim, the R.I. Supreme Court agreed with the motion justice's determination that he was "foreclosed from addressing the illegality of the conspiracy sentences." *Id.* at 624. In light of its reversal of the grant of post-conviction relief, the R.I. Supreme Court remanded "the case to the Superior Court for a proper hearing on the sentence-reduction motion." *Id.* at 623.[23]

Then the R.I. Supreme Court made three noteworthy pronouncements. *Id.* at 624–25. First, the R.I. Supreme Court stated that Mr. Ferrell "never raised double jeopardy itself as a separate issue below." *Id.* at 624. This Court is uncertain as to what the R.I. Supreme Court meant by this statement because Mr. Ferrell raised the issue of double jeopardy "below" in Rule 35 motions and in post-conviction relief applications. Second, the R.I. Supreme Court noted its earlier ruling that Mr. Ferrell had not raised the issue of consecutive conspiracy sentences with the trial justice and therefore had waived the argument under Rule 12(b)(2). *Id.* at 625 (quoting *Oliveira*, 774 A.2d at 920). The R.I. Supreme Court, however, did not explain that it only reached Rule 12(b) in *Oliveira* after erroneously concluding that no Rule 35 motion was pending. Third, based on its ruling in *Oliveira*, the R.I. Supreme Court found that res judicata precluded its consideration of the issue of Mr. Ferrell's double jeopardy sentencing argument. *Id.*

In March 2011, on remand from the R.I. Supreme Court, Mr. Ferrell's Rule 35 motion was decided by a second motion justice of the Superior Court. (ECF No. 21–1 at 4–26.) In a "lengthy bench decision,"

the second motion justice upheld Mr. Ferrell's sentence. *Id.* at 6, 22. The issue of whether Mr. Ferrell's consecutive sentences for conspiracy violate his right to be free from double jeopardy was not mentioned.

## C. Procedural Default Analysis of Double Jeopardy Sentencing Claim

The question now before this Court is set forth in the first prong of *Walker*: did the state court fail to address Mr. Ferrell's claim that his consecutive conspiracy *sentences* violate his guarantee against double jeopardy because of his failure to comply with a state procedural requirement? *See Walker v. Martin*, 562 U.S. ——, 131 S.Ct. 1120, 1127, 179 L.Ed.2d 62 (2011). As detailed above, the R.I. Supreme Court has cited four reasons why it failed to reach the merits of this claim. Analysis of those four reasons reveals that none represents a true failure to comply with an applicable procedural requirement. Because this Court answers the question presented by the first prong of *Walker* in the negative, habeas review of Mr. Ferrell's double jeopardy sentencing claim is not unavailable.

 One reason proffered by the R.I. Supreme Court was that Mr. Ferrell did not raise the issue "below" of his consecutive conspiracy sentences violating his right to be free of double jeopardy. *Ferrell 2009*, 971 A.2d at 624. This is incorrect as Mr. Ferrell raised that issue in several motions in the R.I. Superior Court.[24] A second reason offered by the R.I. Supreme Court was its ruling that it

---

**23.** The R.I. Supreme Court noted that the "motion justice" had retired and indicated that the matter would be assigned to another justice of the Superior Court. *Id.* at 623 n. 5.

**24.** For example, he raised the double jeopardy sentencing argument in both of his post-conviction motions (ECF No. 1–1 at 8; ECF No. 1–4 at 8) and in a Rule 35 motion filed in October 2001. R.I.Super. Ct.Crim. Dkt. Sheet Rep., Case ID P1–1196–1547B.

could not reach the double jeopardy claim because of the doctrine of res judicata. *Ferrell 2009*, 971 A.2d at 625. However, res judicata "does not indicate that the claim has been procedurally defaulted," so this reason does not preclude review. *Cone v. Bell*, 556 U.S. 449, 467, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) (a state court decision not to review a claim because it has been previously decided provides "strong evidence" that it is *"ripe* for federal adjudication"). A third reason provided by R.I. Supreme Court was Mr. Ferrell's withdrawn Rule 35 motion. *Oliveira*, 774 A.2d at 920. This statement was incorrect as a Rule 35 motion was not withdrawn and was pending when that statement was made. *Ferrell 2009*, 971 A.2d at 622. The fourth reason cited by the R.I. Supreme Court, and offered only after its misstatement regarding the pendency of the Rule 35 motion, was Mr. Ferrell's failure to file a Rule 12(b) motion. *Oliveira*, 774 A.2d at 920. This reason also fails to preclude review because the plain language of Rule 12(b)(2) shows that the failure to file a Rule 12(b)(2) motion does not bar litigants from raising double jeopardy *sentencing* arguments.

Rule 12(b)(2) of the R.I. Superior Court Rules of Criminal Procedure states that "[t]he defense of double jeopardy and all *other* defenses and objections based on defects in the institution of the prosecution or in the indictment, information, or complaint other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial." (Emphasis added.) The defenses that must be raised per Rule 12(b)(2) are "defenses … based on defects in the institution of the prosecution, or in the indictment, information, or complaint." While there are double jeopardy arguments "based on defects in the institution of the prosecution, or in the indictment, information, or complaint," the double jeopardy argument raised by Mr. Ferrell is not "based on defects in the institution of the prosecution, or in the indictment, information, or complaint;" rather, it is based on a defect in his *sentence,* a defect in the punishment he received.[25] While Rule 12(b)(2) may bar double jeopardy arguments that are "based on defects in the institution of the prosecution, or in the indictment, information, or complaint," it may *not* bar double jeopardy arguments—such as double jeopardy sentencing arguments—that are *not* "based on defects in the institution of the prosecution, or in the indictment, information, or complaint." Consequently, Mr. Ferrell's failure to file a Rule 12(b) motion should not have barred review of his *sentencing* argument.[26]

■ Even if the failure to file a Rule 12(b) motion was deemed to create a procedural bar, habeas review would not be unavailable because the second prong of *Walker* is not satisfied. *See* 131 S.Ct. at 1127. Under the second prong of *Walker,* habeas relief is unavailable if "the state judgment rests on independent and adequate state procedural grounds." *Id.* (internal quotation marks and citation omitted). "The question whether a state

---

**25.** A double jeopardy argument based on double sentences does not exist pretrial because there has been no conviction and therefore no sentence. In this case, Mr. Ferrell was charged with two conspiracies. It was not until the conclusion of his trial that Mr. Ferrell would have had the opportunity to argue that, at most, only one conspiracy was proven by the evidence.

**26.** Federal court have "re-examined a state-court interpretation of state law when it appears to be an obvious subterfuge to evade consideration of a federal issue." *Mullaney v. Wilbur*, 421 U.S. 684, 691 n. 11, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (internal quotation marks and citation omitted).

procedural ruling is adequate is itself a question of federal law." *Beard v. Kindler*, 558 U.S. ——, 130 S.Ct. 612, 617, 175 L.Ed.2d 417 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)). The U.S. Supreme Court has repeatedly recognized "that federal courts must carefully examine state procedural requirements to ensure that they do not operate to discriminate against claims of federal rights." *Walker*, 131 S.Ct. at 1130.

▮▮▮▮▮ In this case, where the R.I. Supreme Court cited procedural rulings—his failure to file a Rule 12(b) motion and its erroneous belief that he failed to file a Rule 35 motion—when it disposed of Mr. Ferrell's double jeopardy sentencing claim, this Court's "focus here is on the adequate component." *Pina v. Maloney*, 565 F.3d 48, 52 (1st Cir.2009) (internal quotation marks omitted). The U.S. Supreme Court has "framed the adequacy inquiry by asking whether the state rule[s] in question w[ere] firmly established and regularly followed." *Beard*, 130 S.Ct. at 617–18 (internal quotation marks and citations omitted). In other words, "[t]o be considered an 'adequate ground' to bar habeas review, the state procedural rule[s] that [are] the basis for a procedural default ruling must be regularly and consistently enforced by the state courts." *Pina*, 565 F.3d at 53 (citing *Gunter v. Maloney*, 291 F.3d 74, 79 (1st Cir.2002)). If the R.I. Supreme Court "did not regularly and consistently enforce th[ese] procedural default rule[s], then it would not, for federal habeas purposes, constitute an adequate and independent state ground." *Gunter*, 291 F.3d at 79; *see also Hathorn v. Lovorn*, 457 U.S. 255, 262–63, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982); *Beard*, 130 S.Ct. at 617 ("We have framed the adequacy inquiry by asking whether the state court rule in question was firmly established and regularly fol-

lowed ...") (internal quotation marks and citation omitted); *James v. Kentucky*, 466 U.S. 341, 348–49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984) (only state procedures that are "firmly established and regularly followed ... can prevent implementation of federal constitutional rights").

Hence this Court must determine whether in the R.I. Supreme Court's ruling—that the "withdrawn" Rule 35 motion and the lack of a Rule 12(b) motion precludes review of a double jeopardy sentencing argument—was "regularly and consistently" enforced by the R.I. state court. *See, e.g., Pina*, 565 F.3d at 53; *Gunter*, 291 F.3d at 79. Both Mr. Ferrell and the State direct this Court's attention to *State v. Day*, 925 A.2d 962 (R.I.2007). Mr. Ferrell argues that § IC of *Day* supports his argument that Rule 12(b)(2) was not "regularly and consistently" applied to bar double jeopardy merger arguments. *Day*, 925 A.2d at 977–78. The State counters that § II of *Day* supports its argument that Rule 12(b) was "regularly and consistently" applied to bar double jeopardy claims based on the sufficiency of the evidence. *Id.* at 978–979. This Court is not persuaded by either argument as *State v. Day* is not dispositive of the issue before this Court. Ground three of Mr. Ferrell's Petition contends that his consecutive *sentences* for conspiracy violate double jeopardy; it does not contend that substantive offenses merge, nor does it focus on the sufficiency of the evidence.

This Court has reviewed R.I. Supreme Court jurisprudence regarding Rule 35, Rule 12(b), and double jeopardy sentencing arguments. In *State v. Thomas*, 654 A.2d 327, 330–31 (R.I.1995), the R.I. Supreme Court was faced with a double jeopardy sentencing argument that was not raised pursuant to Rule 12(b) in the R.I. Superior Court. The R.I. Supreme Court noted that the failure to "properly" bring

the issue "to the trial justice's attention" constituted a waiver, but dismissed "the appeal on this issue without prejudice and with leave to seek relief in the Superior Court within 120 days pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure." *Id.* at 331. So, although the R.I. Supreme Court did not reach the merits, Mr. Thomas was free to have his double jeopardy sentencing argument heard by the R.I. Superior Court.[27] Generally speaking, when *sentencing* issues are raised in direct appeals, the R.I. Supreme Court routinely does not address the issue and directs defendants to seek Superior Court review of their sentence pursuant to Rule 35.[28] When faced with double jeopardy arguments *not* involving sentences, the R.I. Supreme Court sometimes finds those claims barred because a Rule 12(b) motion was not filed.[29] However, in several cases, the R.I. Supreme Court reached the merits of a double jeopardy argument *not* involving sentences, even though no Rule 12(b) motion was filed.[30] More generally, with respect to sentencing arguments, the R.I. Supreme Court has "unequivocally held that the appropriate procedure * * * is to seek revision of the sentence in Superior Court pursuant to Rule 35."[31] And finally, as explained above, the plain language of Rule 12(b)(2) deems it inapplicable to *sentencing* arguments.

In light of this review, the R.I. Supreme Court has not "regularly and consistently" applied Rules 12 and 35 of the R.I. Superior Court Rules of Criminal Procedure. The state court's judgment therefore does not rest on "independent and adequate state procedural grounds" and habeas review is permissible.

■ Furthermore, even if Mr. Ferrell had violated a "firmly established and regularly followed" state rule that would ordinarily bar habeas review, *see, e.g., Walker v. Martin,* 562 U.S. ——, 131 S.Ct. 1120, 1127, 179 L.Ed.2d 62 (2011) (quoting *Beard v. Kindler,* 558 U.S. 53, 130 S.Ct. 612, 618, 175 L.Ed.2d 417 (2009)), there is an additional independent reason for denying the state's Motion to Dismiss and reviewing this federal constitutional claim: Mr. Ferrell's claim is an exceptional one that it falls within a limited class of "cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna,* 534 U.S. 362, 376, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). As Justice Holmes stated: "What-

27. As explained above, the merits of Mr. Ferrell's Rule 35 double jeopardy sentencing argument never were reached by the R.I. Superior Court.

28. *See, e.g., id.; State v. Mollicone,* 654 A.2d 311, 324–25 (R.I.1995) (R.I. Supreme Court refused to consider challenge to sentence in direct appeal and noted defendant could raise his sentencing argument in the R.I. Superior Court per Rule 35); *State v. Lee,* 502 A.2d 332, 335 (R.I.1985) (dismissing direct appeal challenging sentence without prejudice to defendant filing a Rule 35 motion in Superior Court); *State v. McParlin,* 422 A.2d 742, 745–46 (R.I.1980) (same).

29. *See, e.g., State v. Lee,* 502 A.2d 332, 334 (R.I.1985) (failure to raise argument that mul-

tiple *convictions* violated double jeopardy pursuant to rule 12(b) barred review by R.I. Supreme Court); *State v. Day,* 925 A.2d 962, 978–79 (R.I.2007) (same).

30. *See Pierce v. Wall,* 941 A.2d 189, 192–94 (R.I.2008) (merits of double jeopardy challenge to the charges reached "notwithstanding" the failure to file a Rule 12(b)(2) motion); *see also State v. Shelton,* 990 A.2d 191, 203–04 (R.I.2010) (citing cases where no Rule 12(b) motion was filed but the R.I. Supreme Court found a "compelling reason" to reach the merits of a double jeopardy merger argument).

31. *State v. Brigham,* 638 A.2d 1043, 1047 (R.I. 1994) (quoting *State v. Baptista,* 632 A.2d 343, 345 (R.I.1993)).

ever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Id.* (quoting *Davis v. Wechsler*, 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143 (1923)).

Mr. Ferrell's double jeopardy *sentencing* argument has not been heard on the merits due, in significant part, to the confusion emanating from the R.I. Supreme Court's error in Mr. Ferrell's direct appeal regarding the pendency of his Rule 35 motion. *See State v. Oliveira*, 774 A.2d 893, 920 (R.I.2001). There, the R.I. Supreme Court incorrectly stated that Mr. Ferrell's Rule 35 motion had been withdrawn and further explained that the constitutionality of his sentence would not be considered absent a motion and determination pursuant to Rule 35. *Id.* at 920. In 2005, the motion justice referenced the R.I. Supreme Court's error. *Ferrell v. Wall*, No. PM–02–3635, 2005 WL 373479, *10 (R.I.Super. Feb. 2, 2005) (the R.I. Supreme Court noted that the Rule 35 motion had been withdrawn). In 2007, the motion justice used Mr. Ferrell's failure to appeal his earlier ruling denying relief on an ineffective assistance of counsel motion based on the failure to raise double jeopardy in a post-conviction motion as reason to not reach the double jeopardy *sentencing* issue. (ECF No. 1–5 at 8.) In that same decision, the motion justice also stated that "too much time has gone by for the consideration of a Rule 35 motion." *Id.* at 7. Mr. Ferrell's double jeopardy sentencing claim consequently has been precluded under different rules and for different reasons at different times by different courts. This Court must review Mr. Ferrell's double jeopardy sentencing claim "to ensure that" the state procedural morass does "not operate to discriminate against" this federal constitutional claim. *Walker*, 131 S.Ct. at 1130–31.

### D. Conclusion Regarding Double Jeopardy Sentencing Claim

The issue of whether Mr. Ferrell's constitutional guarantee against double jeopardy is violated by his consecutive conspiracy sentences warrants substantive review. The State's Motion to Dismiss ground three of the petition on the basis that this claim was procedurally defaulted is DENIED for the reasons stated above. Because the parties have not focused on the merits of the double jeopardy sentencing claim, this Court will establish a briefing schedule on the issue.

### 4. Sixth Amendment—Confrontation Clause

 "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (quoting U.S. Const. Amend. VI).[32] "Confrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). "The main and essential purpose of confrontation *is to secure for the opponent the opportunity of cross-examination.*" *Id.* at 315–16, 94 S.Ct. 1105 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed.1940)).

---

**32.** The Sixth Amendment's confrontation guarantee is "enforced against the States under the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (quoting *Malloy v. Hogan*, 378 U.S. 1, 10, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)).

■ In ground four of the Petition, Mr. Ferrell claims that his Sixth Amendment right of confrontation was violated when the trial justice sustained an objection by the prosecutor to a cross-examination question that Mr. Ferrell's trial counsel asked of prosecution witness Lorenzo Evans. When Mr. Ferrell raised this argument in his direct appeal, the R.I. Supreme Court found that it "completely strains all credulity" and it held that "the trial justice did not abuse her discretion in sustaining the prosecutor's objection." *State v. Oliveira,* 774 A.2d 893, 922 (R.I. 2001). The State seeks dismissal of this ground of the Petition because the R.I. Supreme Court's determination that the Confrontation Clause was not violated was not an unreasonable application of clearly established U.S. Supreme Court law, and therefore Mr. Ferrell is not entitled to habeas relief. (ECF No. 10 at 9.) In his objection to the Motion to Dismiss, Mr. Ferrell neither discussed this ground of the Petition nor responded to the State's argument for dismissal. (ECF No. 21.) As Mr. Ferrell "has advanced absolutely no developed argumentation in support of" ground four of the Petition, this Court "deem[s] it to have been abandoned." *Aulson v. Blanchard,* 83 F.3d 1, 7 (1st Cir.1996). Because it has been abandoned by Mr. Ferrell, the State's Motion to Dismiss as to ground four is GRANTED.

■ Moreover, an independent review of the issue leads this Court to conclude that the R.I. Supreme Court did not unreasonably apply clearly established U.S. Supreme Court law when it found the trial justice did not abuse her discretion when she sustained the prosecutor's objection to the cross-examination question that Mr. Ferrell's trial counsel asked Mr. Evans. The R.I. Supreme Court described the relevant exchange as follows:

On direct examination of Evans, the prosecutor asked Evans what Ferrell had done with the gun that Evans had seen in Ferrell's hand. Evans responded that, "[h]e didn't get a chance to point it at me, but * * *." At that point, the trial justice asked the prosecutor to move on. The defense, on cross-examination, attempted to challenge Evans' statement. Evans testified that: "I'm telling [the jurors] that [Ferrell] pulled the gun out, and if I would have stayed longer, he would have pointed it at me and he would have shot." Defense counsel immediately challenged this claim as foundationless and asked: "That's what you're assuming, correct?" The state objected to that question, and the trial justice sustained the state's objection.

*Oliveira,* 774 A.2d at 921. Mr. Ferrell's trial counsel's cross-examination of Mr. Evans "spanned more than forty pages." *Id.* at 922. Further, counsel for Mr. Ferrell's co-defendants conducted cross-examinations and recross-examinations of Mr. Evans. *Id.*

The R.I. Supreme Court noted that while "a criminal defendant is constitutionally guaranteed the right to an effective cross-examination of the prosecution's witnesses[,] * * * the scope of cross-examination is subject to limitation by the trial justice's exercise of his or her sound discretion." *Id.* (quoting *State v. Feole,* 748 A.2d 239, 242 (R.I.2000)). In addition, the R.I. Supreme Court referenced an earlier holding stating "that questions that 'are irrelevant or offer no probative value' surpass the legitimate limits of cross-examination," *id.* (quoting *Feole,* 748 A.2d at 242), and found that "the question at issue here was an argumentative one and well within the trial justice's discretion to preclude." *Id.*

 Here, this Court may grant habeas relief only if the R.I. Supreme Court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "In this regard, 'the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Brown v. Ruane,* 630 F.3d 62, 72 (1st Cir.2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). When reviewing a state court's application of federal law, a federal court does not inquire "how well reasoned the state court decision is," but rather asks "whether the outcome is reasonable." *Id.* (quoting *Hurtado v. Tucker,* 245 F.3d 7, 20 (1st Cir.2001)). Moreover, "[a] state court need not cite or be aware of Supreme Court precedents so long as 'neither the reasoning nor the result of the state-court decision contradicts them.'" *Knight v. Spencer,* 447 F.3d 6, 12 (1st Cir.2006) (quoting *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002)). Furthermore, "decisions involving a defendant's constitutional right to present a defense" are "entitled to substantial deference under AEDPA." *Brown,* 630 F.3d at 72–73.

 The U.S. Supreme Court "sets forth the test for determining whether a limitation on cross-examination violates the Confrontation Clause" in *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). *DiBenedetto v. Hall,* 272 F.3d 1, 10 (1st Cir.2001). To state a violation of the Confrontation Clause, a criminal defendant first must show that "he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and

thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. 1431 (quoting *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). In other words, absent the limitation, would "a reasonable jury" "have received a significantly different impression of [the witness's] credibility had [Mr. Ferrell's] counsel been permitted to pursue his proposed line of cross-examination." *Id.* "The second element of the *Van Arsdall* test is whether the error was harmless beyond a reasonable doubt; if so, reversal is not warranted." *DiBenedetto,* 272 F.3d at 10 (citing *Van Arsdall,* 475 U.S. at 681, 106 S.Ct. 1431).

Mr. Ferrell's trial counsel was precluded from asking one question during a lengthy cross-examination. When inquiring about the same issue, the prosecutor was told to "move on." The R.I. Supreme Court characterized the precluded question as argumentative. This Court cannot say that the R.I. Supreme Court's decision upholding the trial justice's limitation on cross-examination was unreasonable. Accordingly, this Court agrees with the State's contention that the R.I. Supreme Court's *Oliveira* decision is not an unreasonable application of clearly established U.S. Supreme Court Confrontation Clause law. For this additional and independent reason, the State's Motion to Dismiss as to ground four of the Petition is GRANTED.

### 5. *Sixth and Fourteenth Amendments—Ineffective Assistance of Counsel*

 "The Sixth and Fourteenth Amendments to the United States Constitution afford a defendant the right to the effective assistance of counsel in all state criminal prosecutions which may result in the loss of his liberty." *Yeboah–Sefah v.*

*Ficco,* 556 F.3d 53, 70 (1st Cir.2009) (citing *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause: 'In all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defence.'" *Strickland,* 466 U.S. at 684–85, 104 S.Ct. 2052 (quoting U.S. Const. Amend. VI). "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Id.* at 685, 104 S.Ct. 2052 (quoting *Adams v. U.S. ex rel. McCann,* 317 U.S. 269, 275–76, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

 In grounds five, six, seven, and eight of the Petition, Mr. Ferrell advances four separate grounds of ineffective assistance by his trial counsel. (ECF No. 1 at 17–20.)[33] The State moved to dismiss all four ineffective assistance of counsel grounds, arguing that all but one claim within one ground[34] have been procedurally defaulted. (ECF No. 10 at 9–10.) The State did *not* make a procedural default argument with respect to the claim within ground five that trial counsel's discovery failure resulting in the limitation of alibi testimony constituted ineffective assistance. *Id.* at 10 n. 5. Mr. Ferrell did not respond to the State's procedural default arguments with respect to grounds six,

seven, and eight, nor did he respond to the procedural default argument with respect to the other claims asserted within ground five. Because Mr. Ferrell "has advanced absolutely no developed argumentation in support of [these claims of ineffective assistance of counsel]," these claims are deemed "to have been abandoned." *Aulson v. Blanchard,* 83 F.3d 1, 7 (1st Cir. 1996). As such, grounds six, seven, and eight, as well as all claims within ground five except for the claim regarding the discovery error leading to the limitation of alibi testimony, are deemed abandoned and therefore DISMISSED.

 Returning to the claim within ground five that the discovery failure resulting in the limitation of alibi testimony constituted ineffective assistance of counsel, the R.I. Supreme Court addressed this issue within the context of the State's appeal of the motion justice's determination that this error "rose to a constitutional deprivation of representation." *Ferrell 2005,* 889 A.2d 177, 190. The R.I. Supreme Court focused on the second prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and held that Mr. Ferrell "did not suffer constitutionally significant prejudice as a result of [the] excluded testimony." *Id.* at 191. The State argues that the R.I. Supreme Court's determination that Mr. Ferrell was not prejudiced "was not contrary to or involved an unreasonable application of clearly established United States Supreme Court law." (ECF No. 10 at 10 n. 5.) While Mr. Ferrell agrees with the State that the AEDPA's deferential standard of

---

**33.** All four ineffective assistance grounds are titled "Trial counsel rendered ineffective assistance of counsel." *Id.* at 17, 18, 19, 84 S.Ct. 1489.

**34.** Within each of the four ineffective assistance *grounds,* there are multiple *claims* of

error by counsel. *See, e.g., id.* at 17, 84 S.Ct. 1489 (*ground* six contains a *claim* that defense counsel failed to file a bill of particulars and a *claim* that defense counsel elicited testimony on cross-examination that was not elicited on direct).

review applies to this claim, he argues that the R.I. Supreme Court committed an unreasonable application of the *Strickland* prejudice standard. (ECF No. 21 at 25–31.)

The U.S. Supreme Court law at issue is set forth in *Strickland v. Washington,* 466 U.S. at 687–699, 104 S.Ct. 2052. To prove a constitutional violation has occurred due to ineffective assistance of counsel, the following two requirements must be satisfied: (1) "counsel's representation was deficient[,]" meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's "deficient performance prejudiced the defense," such that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052. If the petitioner "falls short on either requirement, his claim fails." *Wright v. Marshall,* 656 F.3d 102, 108 (1st Cir.2011) (citing *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052).

 Here, on habeas review, "[a]n ineffective assistance of counsel claim . . . is a mixed question of law and fact . . . reviewed under the 'unreasonable application' clause of § 2254(d)(1)." *Shuman v. Spencer,* 636 F.3d 24, 31 (1st Cir.2011). "[U]nreasonable under this section of the AEDPA means something greater than incorrect or erroneous." *Id.* at 30 (internal quotation marks and citation omitted). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter,* 562 U.S. ——, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011).

At trial, Mr. Ferrell presented an alibi defense that relied on the medical examiner's testimony that Mr. Carpenter died at 11:27 a.m. *Ferrell 2005,* 889 A.2d 177, 181. Mr. Carpenter's death occurred near the intersection of Division and Dexter Streets, *id.* at 180, on the West Side of Providence. Diane Baptista testified that sometime between 10:40 a.m. and 10:50 a.m., Mr. Ferrell arrived at the Baptista home at 17 Evergreen Street on Providence's East Side. *Id.* at 181. Debra Ann Baptista testified that Mr. Ferrell was at the 17 Evergreen Street home from 10:45 a.m. until 11:00 a.m. *Id.* Nicholas Discullio testified that he spoke with Mr. Ferrell at a gas station on the East Side of Providence at about 11:15 a.m., and they spoke for about fifteen minutes. *Id.* Although not permitted to do so, Debra Ann Baptista "was prepared to testify further that after [Mr. Ferrell] left her house, he returned sometime after 11:15 a.m., and remained there until approximately 11:35 a.m." *Id.*[35] Diane Baptista did testify that when she returned to her home at 11:45 a.m., Mr. Ferrell was there. *Id.*

The R.I. Supreme Court analyzed Mr. Ferrell's claim of ineffective assistance in connection with the discovery violation resulting in the preclusion of alibi testimony in *Ferrell 2005,* 889 A.2d at 190–92. The R.I. Supreme Court referenced *Strickland's* two prong analysis, requiring that the defendants show both that counsel's performance was "deficient" and "prejudiced the defense." *Id.* at 190–91 (quoting *Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984)). The argument before the R.I. Supreme Court was the State's assertion that Mr. Ferrell suffered no prejudice by his trial counsel's error.[36] *Id.* at 191.

---

**35.** The trial justice did not allow this testimony because Mr. Ferrell's counsel did not disclose to the State pursuant to Rule 16 of the R.I. Superior Court Rules of Criminal Procedure that Debra Ann Baptista would testify about Mr. Ferrell's whereabouts after 11:15 a.m. *Id.*

**36.** There was not an argument before the R.I. Supreme Court as to the first part of the

The R.I. Supreme Court found that Nicholas Discullio's testimony that he conversed with Mr. Ferrell at an East Side gas station at 11:15 a.m., for about fifteen minutes, rendered "cumulative" Debra Ann Baptista's excluded testimony that Mr. Ferrell returned to the Evergreen Street home sometime after 11:15 a.m. and stayed there until 11:35 a.m. *Id.* at 181, 191. Due to the "equivalent" alibi testimony admitted at trial, the R.I. Supreme Court deemed it "unlikely" that Debra Ann Baptista's excluded "testimony would have been 'sufficient to undermine confidence in the outcome' of [Mr. Ferrell]'s trial." *Id.* at 191 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). The R.I. Supreme Court held that Mr. Ferrell "did not suffer constitutionally significant prejudice" as a result of the exclusion of Debra Ann Batista's testimony. *Id.*

Mr. Ferrell argues that the R.I. Supreme Court's application of *Strickland* was "objectively unreasonable" because the excluded testimony was not "cumulative" of Mr. Discullio's testimony. (ECF No. 21 at 27–31.) Mr. Ferrell points to the transcript of Mr. Discullio's trial testimony where he testified about his conversation with Mr. Ferrell at an East Side gas station. *Id.* at 28. When asked at approximately what time they spoke, Mr. Discullio testified that "[i]t was 11:15," and when asked the approximate time of the conversation, he said "[a]bout fifteen minutes." (ECF No. 21–1 at 32.) Due to the lack of exactness of both the time and length of the conversation, Mr. Ferrell contends that even if the jury believed Mr. Discullio and his other alibi witnesses' testimony, a jury also could reasonably believe that there was enough time for Mr. Ferrell to

have traveled to the other side of the city before Mr. Carpenter's death. Mr. Ferrell contends that the excluded testimony of Debra Ann Baptista would not have been "cumulative" because it would have filled the gap in time during which Mr. Ferrell would have been able to get to the West Side. In other words, Mr. Ferrell asserts that the excluded testimony, if believed, would have been the only testimony eliminating the possibility that he was on the West Side of Providence at the time of Mr. Carpenter's murder.

Mr. Ferrell has not persuaded this Court that the R.I. Supreme Court applied *Strickland* in "an objectively unreasonable manner." *Sleeper v. Spencer,* 510 F.3d 32, 38 (1st Cir.2007). Although Mr. Ferrell's version of events differs from that of the R.I. Supreme Court, he recognizes that the R.I. Supreme Court's version of events is "possible." (ECF No. 21 at 30.) Mr. Ferrell presents no legal authority supporting his contention that the R.I. Supreme Court "unreasonably" applied the prejudice prong of *Strickland.* Instead, Mr. Ferrell asserts that the R.I. Supreme Court's views on the excluded alibi testimony are inconsistent because it held that: (i) trial counsel's failure to disclose the testimony warranted its exclusion, inferring that admission of such testimony would have been prejudicial to the State, *see State v. Oliveira,* 774 A.2d 893, 908 (R.I.2001); [37] and (ii) the exclusion of the same testimony was not constitutionally prejudicial to Mr. Ferrell. *See Ferrell 2005,* 889 A.2d 177, 191. While creative, and regardless of whether it is correct, this assertion does not indicate that the R.I. Supreme Court's application of the

---

*Strickland* standard, and that issue was not addressed. *Id.*

**37.** The R.I. Supreme Court did not specifically address the issue of prejudice to the State;

it noted that the State "had no notice" regarding alibi testimony at that time period. *Id.*

prejudice prong of *Strickland* was unreasonable. Accordingly, the State's Motion to Dismiss the claim within ground five asserting that counsel was ineffective because a discovery violation led to the exclusion of alibi testimony is GRANTED.

### 6. *Due Process—Recantation*

The Fourteenth Amendment provides, in relevant part, that "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Ground nine of the Petition asserts that Mr. Ferrell's convictions violate due process because Lorenzo Evans recanted his identification of Mr. Ferrell.

The State seeks dismissal of this ground because the R.I. Supreme Court's determination that Mr. Evans' recantation did not entitle Mr. Ferrell to a new trial cannot be deemed an unreasonable application of clearly established U.S. Supreme Court law. (ECF No. 10 at 10–11.) [38] In response, Mr. Ferrell argues that the recantation demonstrates Mr. Ferrell's innocence and, alternatively, that the R.I. Supreme Court made an unreasonable determination of fact in regards to Mr. Evans' credibility. (ECF No. 21 at 31–37.)

Mr. Evans was the primary witness against Mr. Ferrell at trial. *Ferrell 2005*, 889 A.2d 177, 180. Mr. Evans was the only eyewitness placing Mr. Ferrell near the scene of the murder and assault with intent to murder. *Id.* at 182. Mr. Evans testified that he saw Mr. Ferrell sitting in the driver's seat of a white Taurus, nearby the place where Mr. Carpenter was mur-

dered, and he was holding a "chrome object" in his hand that looked like a gun and "he moved it up and down." *Id.* at 181. Mr. Evans' identification and trial testimony served "as the basis for" Mr. Ferrell's convictions for assault with intent to murder and two conspiracies. *Id.*

On June 24, 1997, the day before Mr. Ferrell's sentencing, Mr. Evans recanted his trial testimony in the office of Mr. Ferrell's trial counsel. *Id.* at 182. This recantation was preserved on videotape.[39] *Id.* This videotape was not presented at the June 25, 1997 sentencing hearing. *Id.* It was not brought to the state court's attention until February 27, 2001, when Mr. Ferrell filed a Motion to Remand Case for Consideration of Newly Discovered Evidence and Newly Available Evidence and he submitted the almost four-year-old videotaped recantation. *Id.*[40]

In ruling on Mr. Ferrell's first motion for post-conviction relief, the motion justice found Mr. Evans' recantation credible, and, in light of this new evidence, vacated his convictions and sentences. *See Ferrell v. Wall*, No. PM–02–3635, 2005 WL 373479, at *1 (R.I.Super. Feb. 2, 2005). The motion justice was reversed by the R.I. Supreme Court in *Ferrell 2005*. *See* 889 A.2d 177, 180. Ultimately, the R.I. Supreme Court found that the motion justice "was presented with insufficient evidence to properly determine the credibility of [Mr.] Evans's recantation" and committed "clear error in finding this recantation credible." *Id.* at 188. Mr. Ferrell's convictions were reinstated by the R.I. Supreme Court. *Id.* at 192.

---

**38.** While the State sought dismissal on this basis, it cited not only 28 U.S.C. § 2254(d)(1)—referencing "contrary to" or "unreasonable application of" clearly established U.S. Supreme Court law, but also 28 U.S.C. § 2254(d)(2)—referencing an "unreasonable determination of the facts." *Id.* at 9.

**39.** This Court permitted Mr. Ferrell to show the videotape of Mr. Evans' recantation at oral argument on the Motion to Dismiss.

**40.** That motion to remand was denied on April 17, 2001. *Id.*

In his objection to the Motion to Dismiss, Mr. Ferrell first suggests that even though this is not a capital case, the recantation testimony demonstrates actual innocence and therefore this Court should find him entitled to habeas relief. Although Mr. Ferrell notes that *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), "cast doubt" on the viability of such a claim outside of a capital case, he nevertheless argues that a "freestanding claim of actual innocence" may not be foreclosed. (ECF No. 21 at 31–33.) The First Circuit has explained that the "actual innocence rubric ... has been firmly disallowed by the Supreme Court as an independent ground of habeas relief, save (possibly) in extraordinary circumstances in a capital case." *David v. Hall,* 318 F.3d 343, 347–48 (1st Cir.2003) (citing *Herrera v. Collins,* 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). Here, in a non-capital case, Mr. Ferrell cannot pursue an actual innocence claim "as an independent ground of habeas relief."

Turning to Mr. Ferrell's second assertion, he argues that the R.I. Supreme Court made an unreasonable determination of fact when it found Mr. Evans' recantation incredible. (ECF No. 21 at 33–37.) He contends that the R.I. Supreme Court lacked deference to the motion justice's finding that Mr. Evans' recantation was credible.

This Court reviews factual findings made by the R.I. Supreme Court pursuant to 28 U.S.C. § 2254(d)(2), which prohibits habeas relief unless the R.I. Supreme Court's adjudication " 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Sanna v. Dipaolo,* 265 F.3d 1, 7 (1st Cir.2001) (quoting 28 U.S.C. § 2254(d)(2)). Such determinations of factual issues "shall be presumed to be correct" and the petitioner " 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.' " *Id.* (quoting 28 U.S.C. § 2254(e)(1)).

In holding that the motion justice committed clear error by finding the recantation credible, the R.I. Supreme Court concentrated on the following: the recantation was not under oath; it was made out-of-court; and it was not subject to cross-examination. *Ferrell 2005,* 889 A.2d 177, 184–87. The R.I. Supreme Court also focused on the fact that the recanting witness refused to testify at the hearing before the motion justice. *Id.* at 186–87. In addition, the R.I. Supreme Court noted the timeliness of Mr. Ferrell's submission of the recantation tape: although it was recorded the day before his sentencing, Mr. Ferrell did not provide the videotape to the court for almost four years. *Id.* at 182.[41]

In light of the habeas standard, this Court cannot say that Mr. Ferrell has set forth "clear and convincing" evidence rebutting the R.I. Supreme Court's determination that Mr. Evans' recantation was not credible. Accordingly, because Mr. Ferrell has not shown entitlement to habeas relief in connection with Mr. Evans' recantation, the State's Motion to Dismiss is GRANTED as to ground nine.

---

41. Moreover, the R.I. Supreme Court went on to hold that the recantation videotape was inadmissible hearsay as it "did not bear substantial indicia of trustworthiness sufficient to overcome the presumption of its inadmissibility" because it was made more than a year and half after the murder, it contained Mr. Evans' third version of events, and other than the testimony of a codefendant, there was no evidence to suggest that the version of events in the recantation was more plausible than the version presented to the jury. *Id.* at 189–190.

*CONCLUSION*

Based on the foregoing, the State's Motion to Dismiss (ECF No. 10) is DENIED in PART and GRANTED IN PART. The Motion to Dismiss is DENIED as to grounds one, two, and three of Mr. Ferrell's Petition. This Court will enter an Order setting forth a briefing schedule on those grounds. The State's Motion to Dismiss is GRANTED as to grounds four, five, six, seven, eight, and nine of the Petition; as such, grounds four, five, six, seven, eight, and nine of the Petition are hereby DISMISSED.

IT IS SO ORDERED.